STATE, *ex rel.* CHARLES E. HARRINGTON, *et al.,* v. CITY OF DAYTONA BEACH, E. H. ARMSTRONG, a Mayor Member of the City Commission, *et al.*

160 So. 501.
Division A.
Opinion Filed March 15, 1935.

774

*Giles J. Patterson,* for Relators;

*Millard B. Conklin,* for Respondents.

Davis, J.—This is an original proceeding in mandamus by the State of Florida on the relation of Charles E. Harrington, Feldie Katz and James Tucker, Relators against City of

Daytona Beach, a municipal corporation, E. H. Armstrong, as Mayor and member of the City Commission, J. D. McMillan, Elmer H. Blank, Harry Wilcox and Ralph Richards, as members of the City Commission, F. R. Mills, as City Clerk and Tax Assessor, and Milton S. Couch, as City Manager of said City of Daytona Beach, a municipal corporation, Respondents, wherein, on sworn petition filed by said relators, an alternative writ of mandamus was issued by this court, which, among other things, alleged as follows:

That the City of Daytona Beach is a municipal corporation organized and existing under the Laws of the State of Florida; that E. H. Armstrong is qualified and acting as Mayor-Commissioner, and J. D. McMillan, Elmer H. Blank, Harry Wilcox and Ralph Richards as City Commissioners, F. R. Mills as City Clerk and Tax Assessor and Milton S. Couch as City Manager, that the City of Daytona, Town of Daytona Beach or Town of Seabreeze, or their successor, City of Daytona Beach, issued bonds of twenty-two (22) different series, and that certain of said bonds or coupons attached thereto, which are described in detail, mature on various dates during the year 1933, commencing on January 1st, the total amount of said bonds and coupons being $69,605.00.

That under Section 196 of Chapter 10466, Special Acts of Florida, 1925, the legislative charter of respondent city, only property within the territorial boundaries of the City of Daytona, Town of Daytona Beach or the Town of Seabreeze, shall be bound for the contracts and debts of the issuing municipality; that under Section 98 of said charter, said city shall levy a tax upon all its taxable property to pay the indebtedness of the city; that by Section 117 of said charter the City Commission shall determine the amount, fix the rate of taxation and make the annual levy; that by Sec-

tion 101 of said charter, all property shall be assessed as of the 1st day of January for the fiscal year for which said assessment is made; that it is the duty of the City Manager and City Commissioners to prepare and adopt a budget for respondent city for the fiscal year 1935, and it is the duty of the respondents to make the annual tax levy for the year of 1935 for the payment of bonds and coupons of relators described in the alternative writ; that it is the duty of F. R. Mills as City Tax Assessor to prepare and complete the assessment roll for the year 1935, and to certify and deliver said roll to the City Tax Collector.

That the respondent city is preparing, or has prepared, a budget for the year 1935 and has failed to appropriate any sum of money for the payment of its bonded debt, has failed to prepare a tax assessment roll covering real and personal property, and officials of the city have stated that they do not intend to prepare an assessment roll, as items included as expense in the budget will be met from other forms of taxation, and that it was not their intention to levy any *ad valorem* tax for the fiscal year of 1935 for bonds or for any other purpose.

The alternative writ commands F. R. Mills, as acting Tax Assessor, to prepare, in accordance with law, an assessment roll on all real and personal property within the municipality and indicate the property subject to taxation for the respective bond issues therein described; and the City Manager and City Commissioners to revise, modify and include in the budget for the fiscal year of 1935 a sum of money equal to that which will accrue to the petitioners, and fix and determine the millage of the tax to be levied in the respective zones sufficient to pay the respective bonds and coupons issued therein, and the City Assessor to note the several levies in the assessment roll and to complete the

same, attach his certificate thereto and deliver the same to the City Tax Collector, as provided by law.

The proposition now before the Court is whether or not a demurrer and a motion of respondents to quash the alternative writ should be sustained, the particular grounds of the motion and demurrer being that mandamus will not lie to compel the performance of an official duty until there has been an actual default in the performance of the duty sought to be coerced. In support of this ground it is argued that there can be no default until the time has arrived for the performance of the duty sought to be coerced and that mandamus will not issue in anticipation of an omission of such duty.

The alternative writ alleges that the City of Daytona Beach is in default more than $150,000.00 for interest as well as a large amount of past due bonds and that there will accrue to relators alone during the current fiscal year, 1935, over $100,000.00; that the city is now preparing its budget and in said budget has failed to appropriate any sum whatsoever for a payment of principal or interest of the city's debts and that in addition to the foregoing, that the city has failed to prepare a tax assessment roll covering real and personal property located within the boundaries of the city and required to be subjected to liability for taxation. It is further alleged in positive terms that the city officials have stated that they do not intend to prepare an assessment roll, but will meet their operating expenses by receipts from miscellaneous revenues, including a 3% sales tax, and for that reason will refuse to levy any *ad valorem* tax for the current fiscal year for either debt service or for any other purpose.

The mandatory portion of the writ commands that the respondents, as city officials of the City of Daytona Beach,

carry out the terms of the statutes under which relators' bonds and interest coupons were issued and sold, by carrying on their functions in the following particulars:

1.  The preparation of an assessment roll showing the filing of the return of the personal property within the boundaries of the city.

2.  The inclusion in the budget either by revision or modification of a sum of money sufficient to pay the moneys which will accrue to the relators.

3.  The fixing of a millage to be levied against property sufficient to raise such sum of money necessary to pay the principal and interest described.

4.  To note the taxes levied on the assessment roll.

The objection that the alternative writ shows that the respondent city officials are not yet in default and that the writ of mandamus against them is accordingly premature, and should not be issued upon the mere threat of the respondents to refuse to carry out their lawful duties in the premises, is not well taken.

A demurrer and motion to quash an alternative writ of mandamus (being the equivalent of each other insofar as a ruling on them is concerned) admits the truth of the allegations of the alternative writ, and therefore admits that the city has not made the revenue provisions that the statutes require it to make *annually* for the purpose of keeping its bonded debts from coming into default. Indeed the writ alleges, and the motion and demurrer admit, that the City of Daytona Beach is now in default on its indebtedness for a considerable amount.

The showing of an existing default on the part of a municipal corporation in the making of adequate provision for the payment of its debts as required by the statutes under which its municipal bonds have been issued and sold, is a

sufficient predicate for the issuance of a peremptory writ of mandamus to coerce the respondent municipal officials to forthwith take all necessary and appropriate legal steps not only to cure the existing default of the city itself which occurred *eo instanti* its municipal liabilities went into past default, but to take all necessary and appropriate steps to avoid a reoccurrence of any further default as to the current and presently maturing obligations of the city in which relator has an interest. See: Treat, Mayor-Commissioner v. State, *ex rel.* Dann, decided at the present term.

So is it true in this case, as argued by the respondents, that the alternative writ of mandamus here sought is premature, because it has not been made to appear by its allegations that there has been any actual default on the part of respondents within the rule of the following cases? County Comm'rs of Lake County v. State, 24 Fla. 263, 4 Sou. Rep. 795; State, *ex rel.* Board of Public Inst. v. County Comm'rs of Volusia County, 28 Fla. 793, 10 Sou. Rep. 14; *Ex Parte* Ivey and Harrell, 26 Fla. 537, 8 Sou. Rep. 427; State, *ex rel.* Scott, v. County Commrs. of Jefferson County, 17 Fla. 707; McConihe v. State, *ex rel.* McMurray, 17 Fla. 238. We think not and for the following reasons:

The City of Daytona Beach issued relators' bonds under state statute which imposed upon the municipality *qua* a public corporation, the plain and inescapable legal duty to not only pay said bonds and the interest coupons annexed to same when and as due, but to anticipate *in proper season* its revenue needs for that purpose and upon the basis of a proper estimate of such needs, levy sufficient *ad valorem* taxes to raise the revenue and produce the funds required to be annually set aside or appropriated to pay relators' demands. To enable the municipality as such to discharge its obligation toward relators the City of Daytona Beach was

vested with the statutory power to levy *ad valorem* taxes upon the real and personal property subject to its jurisdiction. As direct security that the obligor would not fail in its discharge of such legal duty, the statutes under which relators' debt was created provided for a pledge of the city's *ad valorem* taxing powers and the exercise thereof annually to an extent sufficient to keep relators' obligations and the other obligations of the city from going into default. Thus the City of Daytona Beach has bound itself toward relator to anticipate and provide for sufficient revenues in proper season to annually meet its current and presently maturing bonds and coupons in order that relator and others similarly situated may be promptly paid and their indebtedness duly satisfied at maturity.

A municipal corporation must act through its governing authority, and when its governing authority fails in the performance of its plain legal duty required by statute to seasonably anticipate its financial requirements and upon that basis to make a sufficient levy of pledged taxes to provide adequate revenue to enable it to pay its current and presently maturing financial obligations falling due to its creditors, the failure of the governing authority of such city to so anticipate its financial needs in proper season and its failure to thereupon provide for the revenue requirements of the municipality as provided for by statute, constitutes all the default that is essential to sustain a writ of mandamus brought in favor of a creditor who shows himself entitled to look to the prompt and orderly performance of the municipality's financial routine as the principal means by which he is to realize payment by the city of its obligations that he holds.

The showing of an existing default is sufficient proof of the fact that the governing authority of the city has not

heretofore correctly and seasonably anticipated and provided for the city's financial needs, else the past defaults shown would not have occurred. Therefore the fact of a past or an existing default on the part of such municipality entitled its creditors to resort to the courts for protection by mandamus against the likelihood of current or future defaults that are shown to be imminent on the city's part as to its current or presently maturing obligations for which a seasonable and adequate anticipation of needed finance and the raising of revenue to meet same must be provided by the municipality in order to protect relators' rights in the premises against the imminently threatened injury.

The right of a municipal corporation to appropriate money to pay its debts out of other and different sources of revenue than those particularly pledged in its bonds must be conceded.

But a municipal corporation has no right to refuse to discharge its contractually bounden legal duty to so seasonably exercise its already pledged taxing powers, in manner and form as provided by statute, as to anticipate and provide for the payment of its obligations at maturity, so long as it is in default on any of its obligations. Nor can it legally so refuse to act until it has not only provided for but actually collected and appropriated sufficient funds from such other revenue sources adequate to render an exercise of its normally pledged *ad valorem* taxing powers unnecessary during the particular period for which such pledged taxing powers would otherwise be required by existing law to be exercised, absent the appropriation of sufficient funds from other revenue sources. See: Rountree v. State, *ex rel* Georgia Bond & Mortgage Company, 102 Fla. 246, 135 Sou. Rep. 888.

Neither the state, nor a public corporation acting under a ·

taxing power delegated to it by the State, has the right to hinder, delay, impede or embarrass its creditors by a withdrawal or refusal to exercise a taxing power already given by law and obligated to be exercised in due season for the protection of its creditors, until full, complete and adequate substituted funds equivalent to the amount pledged to be raised by its obligated taxing powers have been already raised and appropriated in satisfaction of the claims of creditors who otherwise would be entitled to invoke the exercise of taxing powers already given by law for the realization of what is then due. To hold otherwise would be to countenance an unconstitutional impairment of the obligation of a contract in violation of Section 10 of Article I of the Constitution of the United States as well as in violation of Section 17 of the Bill of Rights of the Florida Constitution. See authorities reviewed in Boatright v. City of Jacksonville, 117 Fla. 477, 158 Sou. Rep. 42.

In the present case respondents rely upon the presumption that city officials will, in compliance with the statutes under which relators' bonds were issued, make adequate provision in due course in the city's current budget for the payment of maturing installments of principal and interest on the city's bonds. State, *ex rel.* Harris, v. City of Fort Pierce, 111 Fla. 174, 149 Sou. Rep. 338. But any such presumption as a ground for denial of a writ of mandamus in the present proceeding is absolutely and affirmatively negatived by the allegations of the alternative writ which specifically set up that the City of Daytona Beach is already in partial default in the payment of its funded debts and that it is not only failing to take any appropriate steps to remedy the default existing, but is actually pursuing a course of conduct designed to precipitate and bring about other and future

defaults in the handling of its fiscal affairs with reference to relators' obligations.

Where a municipal corporation, against whose officials a writ of mandamus is sought to set in motion and keep in operation the provisions of statutes the timely performance of the duties of which relator, as a municipal creditor, is entitled to invoke for his protection against an imminently threatened injury of non performance, has by its past course of conduct in failing to seasonably anticipate and provide for its prior financial needs, manifested the likelihood that it will not amply execute its full statutory duties during a current period set by law for their performance, the Court is not obligated to wait until the evil of non performance is a reality before issuing its writ of mandamus to secure the relator against the likelihood of a threatened injury charged as being intended to be perpetrated to his detriment during such current period, although the time for current performance has not expired. Attorney General v. Boston, 123 Mass. 460; Berkey v. Board of Comm'rs. of Pueblo County, 48 Colo. 104, 110 Pac. Rep. 197, 20 Am. & Eng. Ann. Cas. 1109; State, *ex rel.* Whithycombe, v. Stannard, 84 Ore. 450, 165 Pac. Rep. 566; L. R. A. (NS) 1917-F 215.

A mandamus will not be granted in mere anticipation of a defect of duty or error of conduct, but there is a well defined exception to such rule when the aid of the courts is sought in a case wherein it is made clear that the present issuance of a writ of mandamus is necessary in order to secure the execution of laws by a person or corporation manifesting a present determination not to execute such laws unless compelled to do so by judicial order and decree. Berkey v. Board of Comm'rs of Pueblo County, 20 Am. & Eng. Ann. Cas. 1109, *supra.*

Motion to quash alternative writ denied and demurrer

to same overruled with leave to plead further to the alternative writ within fifteen days in default of which final judgment for peremptory writ of mandamus pursuant to the alternative writ is directed to be entered by the Clerk of this Court.

WHITFIELD, C. J., and BROWN, J., concur.

ELLIS, P. J., and TERRELL, and BUFORD, J. J., concur in the opinion and judgment.