:STATE, *ex rel.* SOVEREIGN CAMP WOODMAN OF THE WORLD, v. JOHN M. BORING, as Tax Assessor of Lee County.

164 So. 859.

Opinion Filed November 27, 1935.

*Henderson & Franklin,* for Relator.

*William E. Thompson* and *W. H. Poe,* for Respondent.

CAMPBELL, Circuit Judge.—The relator upon its sworn petition procured an alternative writ of mandamus to issue from this Court against the respondent, the allegations of which after describing the respective parties, are substantially as follows: That from time to time prior to the year 1930 Special Tax School District No. 1, of Lee County, Florida, a duly and legally created Special Tax School District, issued its bonds and obligations for the purpose of borrowing money with which to construct school buildings, and for other school purposes; that each of said bonds was of the par value of $1000.00 payable to bearer and recited that for the prompt payment of both the principal and interest thereof, the full faith and credit, and resources of said Special Tax School District No. 1 of Lee County, Florida, was irrevocably pledged; that said Special Tax School District No. 1, has, outstanding and unpaid, bonds in the aggregate amount of $600,000.00, of which bonds approximately $100,000.00 have long since matured and remain unpaid and uncanceled, and that there are no funds available for the payment thereof; that all the bonds provide for the payment of interest semi-annually, the principal maturing from year to year; that during the fiscal year from October 1, 1935, to September 30, 1936, in order to

meet payment of principal and interest *now due,* prior to September 1, 1936, Special Tax School District No. 1, of Lee County, Florida, will require the aggregate amount of $125,990.00, and the district has no source of obtaining funds to meet its obligations, *except* by the levy of taxes on the property in said District.

It is further alleged in substance, that pursuant to the request of the Board of Public Instruction for Lee County, Florida, the Board of County Commissioners of said county, have by resolution caused to be levied a tax of 35 mills on the dollar on all taxable property in said Special Tax School District No. 1, for the purpose of raising funds to pay the interest on and the principal of, the bonded indebtedness of the district, for the fiscal year beginning October 1, 1935, and ending September 30, 1936.

It is also alleged that the respondent, as Tax Assessor of Lee County, Florida, has, pursuant to law, prepared an assessment roll covering the assessment of all property including homestead land in Lee County, Florida, as of the 1st day of January, 1935, which assessment roll shows property in said Special Tax School District No. 1, including homestead lands; that the assessment roll so prepared, shows a valuation of $2,336,438.00 on the property in Special Tax School District No. 1, including homestead land, and that of said total value of property within said Special Tax District, the sum of $491,358.00 represents the valuation placed upon homestead lands.

It is then alleged in substance that the assessment roll for 1935 has been delivered to and reviewed and equalized by, the Board of County Commissioners of the County of Lee, and the amounts to be raised for State, County and Special Tax School Districts and other special tax purposes, have been determined, and the tax assessment roll

returned to the respondent, Tax Assessor of Lee County, Florida, and that it is his duty forthwith to calculate and carry out on said assessment roll the total amount of county taxes, and the total amount of Special Tax School Districts and other special taxes in the several columns prepared for that purpose; that as to homestead lands in said Special Tax School District No. 1, it is the duty of the respondent to calculate and carry out on said assessment roll where homesteads are shown, the said levy of 35 mills on each dollar, made by the taxing authorities in said district for the purpose of raising money to pay interest and principal on the bonded indebtedness of the district; and that the respondent is engaged in calculating and carrying out on the assessment roll the taxes levied, and is setting opposite the aggregate sum set down as the valuation of real and personal property the respective sums assessed as taxes thereon in dollars and cents; that respondent takes the position, however, that homestead lands are exempt from all taxation, and has announced publicly that he will not extend any taxes against homesteads, and in calculating and carrying out taxes on the assessment roll the respondent is not setting opposite the sum set down as the valuation of homestead land any sum or tax whatsoever, but is refusing so to do and unless required by the process of the court will continue so to do.

Furthermore the alternative writ of mandamus alleges in substance that the relator is the owner and holder of certain of the bonds of Special Tax School District No. 1 of Lee County, Florida, particularly 35 bonds of the issue of November 1, 1913, and 227 bonds of the issue of April 1, 1935, and that 69 of said bonds are now in default, and that eleven additional bonds and interest on all said bonds to the amount of $13,000.00, will mature October 1, 1936;

that the levy of 35 mills on the dollar on taxable property in said district is made for the benefit of all bonds and coupons issued by the district and that should the amount be paid in full, the aggregate amount of $81,725.33 will be raised, which amount is far short of the requirements of the district for debt purposes during the fiscal year October 1, 1935, to September 30, 1936, and that *if* homestead lands escape taxation, the amount raised will be greatly reduced.

The alternative writ recites the adoption of the amendment to the Constitution of the State of Florida, whereby Section 7, Article X, of the Constitution became a part of the organic law of the State on November 6, 1934, and then alleges the following:

"That the amendment to the Constitution of the State of Florida, does not exempt homestead lands in said Special Tax School District No. 1 from taxes levied for the purpose of paying principal and interest on the bonds and obligations of said district issued long prior to the ratification of the said amendment to the Constitution of the State of Florida; that the bonds issued by said district created a contract with the holders thereof, and by such contract the full faith, credit and resources of said District are pledged for the payment thereof, and to construe the amendment to the Constitution of the State of Florida to exempt homestead lands in said District from the payment of taxes levied to meet interest and sinking fund requirements on bonds issued prior to ratification of said amendment would deprive the holders thereof of their property without due process of law in violation of the provisions of the Fourteenth Amendment of the Constitution of the United States."

The alternative writ then commands the respondent, John

M. Boring as Tax Assessor of Lee County, Florida, to calculate and carry out on the assessment roll for Lee County, Florida, for the year 1935, in special Tax School District No. 1 of said Lee County, Florida, as against homestead lands assessed and shown by said assessment roll, the tax of 35 mills on the dollar levied on property in said Special Tax School District No. 1 for the purpose of paying interest and principal on the outstanding bonded indebtedness of said district, setting opposite to the aggregate sum set down as the value of homesteads the said levy of 35 mills in dollars and cents, and to include said amounts in adding up the columns of assessment and taxes contained on said roll, or that upon his failure to do so as therein commanded, he appear * * * and show cause if any there be, for his failure so to do."

On the return day named in the alternative writ, the respondent filed motion to quash such alternative writ, and we now have this motion before us for consideration.

The several grounds of the motion to quash may be said to advance two principal theories or contentions, why the alternative writ should be quashed, and we state these as follows:

First. That the language of the "Homestead Tax Exemption Amendment" is to be strictly followed, the result thereof being that homesteads are now exempt from all taxation.

Second. That the relator should seek to require an increased levy on non-homestead land rather than to enforce the existing levy against homestead lands.

We here have for consideration another case involving the effect of the "Homestead Tax Exemption Amendment" to the Constitution, adopted on November 6, 1934, as Section 7 of Article 10 of the Constitution of Florida, upon bond

contracts made by the various taxing units of the State prior to the adoption of such constitutional provision.

In this case Special Tax School District No. 1 of Lee County, Florida, according to the allegation of the alternative writ of mandamus, prior to November 6, 1934, to-wit, in November, 1913, and in April, 1925, issued bonds of the District for the purpose of paying for the construction of school buildings in the district and for other school purposes. These bonds were issued under the authority of Section 17, Article XII of the Constitution of Florida, as amended in 1912 and in 1924, and of Section 593, Revised General Statutes of Florida, Section 735, Compiled General Laws of Florida.

Among other things, Section 17 of Article XII of the Constitution of Florida, as amended in 1924, provides as follows:

"Whenever any such special tax school district has voted in favor of the issuance of such bonds a *special tax for the payment of the interest on said bonds and the principal thereof as the same shall become due and payable, shall be levied on the taxable property within the district voting for their issuance, in accordance with law, providing for the levy of taxes, and such tax shall not be applied to any purpose other than the payment of the principal and interest of said bonds.*" (Italics ours.)

Statutory provision to put in operation the taxing machinery for making the levy of the special tax provided by the Constitution for the payment of the bonds authorized in Section 17, Article XII, Constitution of Florida, *supra,* is as follows:

"Whenever any special tax district bonds shall have been issued in pursuance of this Article it shall be the duty of the Board of county commissioners of said county to levy

annually a tax upon all real and personal property, railroads, telegraph and telephone lines, owned or situated within said special school tax district, not to exceed five mills on the dollar in any one year sufficient to raise and pay the interest on said special tax school district bonds and sufficient to create the sinking fund for the payment of principal of said bonds at maturity of same, which sinking fund shall be provided for by resolution of the county board of public instruction before the issuing of any bonds." Sec. 593 R. G. S., 735 C. G. L. of Florida.

This statutory provision taken from Chapter 6542, Laws of Florida, 1913, as amended by Chapter 6967, Acts 1915, carried with it a provision for the levy of only five mills on the dollar. Section 17, Article XII of the Constitution, as it read prior to 1924, only authorized a levy of five mills for debt service on bonds of the district. However in 1924, the Constitution was so amended as to authorize the levy of *"a special tax for the payment of the interest on said bonds and the principal thereof as the same shall become due and payable."* We held in the case of Perry v. Consolidated Special Tax School District No. 4, 89 Fla. 271, 103 So. 635, that this amendment to the Constitution having been adopted subsequent to Chapter 6542, Acts of 1913, as amended by Chapter 6967, Acts of 1915, superseded the limitation of a five mills tax therein provided, and that it was the duty of taxing officials to levy a tax *sufficient* to meet the payment of principal and interest, as required by the Constitution.

Section 731, Revised General Statutes, Section 937, Compiled General Laws, provides that when the County Commissioners of a county have examined and equalized the tax assessment roll, they "shall *determine* the amount to be raised for all county purposes, and shall enter upon their

minutes the rates to be levied for each fund respectively and shall *ascertain* the aggregate rate necessary to cover all taxes, etc." The tax rolls are thereupon returned by the County Commissioners to the Tax Assessor with a written statement "setting forth the boundary of each special tax school district, * * * and the county assessor of taxes shall upon receipt of such statement and an order from the board of county commissioners setting forth the rate of taxation to be levied on the *real* and *personal property* therein, *proceed to assess such property* and enter the taxes thereon, in separate columns on the assessment rolls as provided for that purpose." (Italics supplied.)

From the allegations of the alternative writ of mandamus it appears that Special Tax School District No. 1 of Lee County, Florida, issued bonds of said district to an amount aggregating $600,000.00 of which $100,000.00 have matured and are unpaid.

It further appears that all these bonds were issued long prior to November 6, 1934, the date of the adoption of Section 7, Article X, purporting to exempt homestead real estate from all taxation. It appears also that the relator is the owner and holder of a substantial number of these bonds, many of which are past due and unpaid, and the interest on all will be due October 1, 1935, and April 1, 1936. It further appears that the Board of County Commissioners of Lee County, Florida, did at the request of the Board of Public Instruction for said County, levy upon all the lands in Special Tax School District No. 1 a tax of 35 mills on the dollar, to raise the revenue to pay the interest and provide for payment of the principal of the bonds of the District. It further appears that the Board of County Commissioners have examined, reviewed and equalized the tax assessment roll covering the assessment of all prop-

erty, including homestead lands, in Lee County, Florida, as of the first day of January, 1935, which also shows property in Special Tax School District No. 1, including homestead lands.

It appears further from the allegations of the alternative writ of mandamus, that the valuation of the property in Special Tax School District No. 1, as shown on the assessment roll prepared by the respondent, is $2,336,438.00, including homestead lands. That of this total valuation, $491,358.00 represents the valuation placed by respondent on homestead lands. It further appears that although the levy of 35 mills on the dollar has been made by the Board of County Commissioners at the request of the Board of Public Instruction, upon the real and personal property in said Special Tax School District No. 1, yet the respondent fails and refuses to calculate and carry out the taxes levied on any homesteads in said Special Tax School District No. 1, announcing his intention not to assess any taxes on homesteads because, in his opinion, they are exempt from taxation by reason of the provision of Section 7, Article X of the Constitution of Florida. It also appears from the allegations of the alternative writ of mandamus, that bonds of the district aggregating $600,000.00 are outstanding, and that of this sum $100,000.00 has matured and remains unpaid. Also it appears that it will require over $125,000.00 to meet the debt service requirements on these bonds for the fiscal year, October 1, 1935, to September 30, 1936, and that if the entire tax levied in the district on all property, including homesteads, is collected, approximately only $81,000.00 will be realized.

All these allegations specifically referred to, and other allegations of the alternative writ, are, by the filing of the motion to quash, admitted to be true for the purposes of

our consideration of the question before us. See State, *ex rel.* Harrington, *et al.,* v. City of Daytona Beach, 118 Fla. 773, 160 So. 501; Milam v. State, 113 Fla. 491, 133 So. 100; State v. Jacksonville Terminal Co., 71 Fla. 295, 71 So. 474; State v. East Coast Railroad Co., 71 Fla. 433, 71 So. 543.

It is therefore admitted by the respondent, that the relator is the owner and holder of the bonds of Special Tax School District Number 1 of Lee County, Florida, upon which large sums are due and payable or will become due and payable during the fiscal year beginning October 1, 1935. It is further admitted that these bonds were issued long prior to the adoption of Section 7, Article X of the Constitution of Florida exempting homestead lands from taxation. It is also admitted that when the Special Tax School District bonds were issued, the Constitution of Florida and the laws of Florida provided for a special tax to be levied on the "taxable property" within the district, for the payment of the interest on said bonds and the principal thereof as the same became due and payable.

It is the contention of the respondent that regardless of these admitted facts, the provisions of Section 7, Article X of the Constitution of Florida, preclude him from assessing the 35 mills levied by the county commissioners of Lee County, Florida, and requested by the Board of Public Instruction for the county for debt service on such bonds, and which he was ordered by the county commissioners to assess. It is contended that despite these allegations, admitted to be true, they are not sufficient to authorize the relief demanded in the alternative writ of mandamus. Several months before November 6, 1934, the date of the ratification of Section 7, Article X of the Constitution of Florida, the people of the State of Florida were informed

that the provision for exempting homestead land from taxation would be invalid insofar as taxation for debt service on bonds, issued prior to its adoption, was concerned. In the case of Gray, Secretary of State, v. Moss, 115 Fla. 701, 156 So. 262, a case probably brought for the purpose of having light thrown upon the legal effect of its provisions in this regard, this court said through Mr. Justice WHITFIELD:

"The prohibition of laws impairing contractual obligations by the Federal Constitution applied to the Constitution as well as to the laws of each state."

And again in the same case Mr. Justice WHITFIELD says, speaking for the Court: "State constitutions and amendments thereto are subject to applicable prohibitions and limitations of Federal Constitution," citing Constitution of U. S., Art. 6, Par. 3; Article 16, Paragraph 2.

Also in the same opinion this court still speaking through Mr. Justice WHITFIELD, said: "The prohibition in the Constitution of the United States against the passage of laws impairing the obligation of contracts applies to the *Constitution as well as the laws of each state.*"

Mr. Justice WHITFIELD said further in his able opinion in the case of Gray, Secretary of State, v. Moss, *supra,* that the words "exempt from all taxation," as appeared in the then *proposed* Section 7, Article X, of the Constitution of Florida, exempting certain homesteads from taxation, should be held to mean "exempted from all taxation when not restrained by the Federal Constitution." This court said also in the case of Gray, Secretary of State, v. Winthrop, 115 Fla. 721, 156 So. 720, the following: "Applicable provisions of Federal Constitution within their proper sphere of operation *are dominant authority in the interpretation* and *enforcement* of state constitutional provisions

which may be affected by Federal organic provisions."
(Italics supplied.)

. The people, therefore, when they ratified or adopted the
"Homestead Tax Exemption Amendment," viz., Section 7,
Article X. Constitution of the State of Florida, acted with
knowledge of its non-effectiveness, in exempting homestead
lands from taxation, to secure funds for debt service on
bonds previously issued by taxing units in the State.

When the bonds of Special Tax School District No. 1,
of Lee County, Florida, described in the alternative writ
of mandamus, were issued, the constitutional provisions of
Section 17, Article XII of the Constitution of Florida as
also the statutory provisions found in Section 593 R. G. S.,
Section 735, C. G. L., requiring and providing for the levy
of an ad valorem tax on all taxable property, real and per-
sonal, in the district, for the payment of the interest, and
of the principal of the bonds at maturity, and all the rem-
edies then existing, for the levy, assessment and collection
of such tax, were included in and became a part of the ob-
ligation of the bond contract. See Von Hoffman v. Quincy,
4 Wall. 535, 15 L. Ed. 403; Galena v. Amy, 5 Wall. 705,
18 L. Ed. 500; United States, *ex rel.* Wolfe, 103 U. S.
358, 26 L. Ed. 395; State of Louisiana, *ex rel.* Southern
Bank v. Pelobury, 105 U. S. 278, 26 L. Ed. 1090; Mobile
v. Watson, 116 U. S. 289, 6 Sup. Ct. 398, 29 L. Ed. 620;
Rollo County Court v. U. S., *ex rel.* Douglas, 105 U. S.
753, 26 L. Ed. 7220; State, *ex rel.* Gillespie, *et al.,* v. Carlton,
*et al.,* 103 Fla. 810, 138 So. 612, 619 (text); Trustees In-
ternal Improvement Fund v. Baily, 10 Fla. 112, text 131, 81
Am. Dec. 194; Revick v. Board of Commissioners of Ever-
glades District, 57 Fed. (2d) 1048; State v. Milam, *et al.,*
115 Fla. 491, 153 So. 100; Humphreys v. State, 108 Fla. 92,
145 So. 858; State, *ex rel.,* v. St. Petersburg, 106 Fla. 742,

144 So. 313; Gray v. Moss, *supra;* Gray v. Winthrop, *supra;* Folks v. County of Marion, 121 Fla. 17, 163 So. 298; State, *ex rel.,* v. Port of ·Palm Beach, *et al.,* decided at this term, also County Commissioners of Columbia County, v. King, 13 Fla. 451.

When the bonds described in the alternative writ of mandamus were issued there was a clearly defined meaning of the term "taxable real and personal property." Especially did the Constitution define *and* limit the exemption of property from taxation to be such as might be exempted by law "for municipal, education, library, scientific, religious and charitable purposes." See Section 1, Article IX, Constitution of Florida. Article X of the Constitution of Florida, the portion of the organic law of the state, governing at that time, the right in the state to exempt homesteads from forced sale for debts, provided among other things, in Section 1 as follows:

. "But no property shall be exempt from *sale for taxes or assessments."* (Italics supplied.)

Therefore the obligation of the bond contracts involved in this proceeding were also made in the light of all these provisions, and the constitutional restriction of laws permitting exemptions from taxation to those classes defined in Section 1, Article IX, of the Constitution of Florida then in force.

Under the provision of Section 10, Article 1, of the Constitution of the United States, no state can pass a valid law or enactment impairing the obligation of contracts.

A state can no more impair the obligation of an antecedent contract by adopting a constitution or amending its constitution than by passing or amending a statute. See Osborn v. Nicholson, *et al.,* 13 Wall. 654-664, 20 L. Ed. 689; Gunn v. Barry, 15 Wall. 610-624, 21 L. Ed. 212; New

Orleans Gas & Light Co. v. Louisiana Light & Heat Producing & Manufacturing Co. (U. S.), 29 L. Ed. 516; State of Louisiana, *ex rel.* Josiah Fisk, v. Police Jury of Jefferson, etc. (U. S.), 29 L. Ed. 587; City of Shreveport v. Cole, *et al.* (U. S.), 32 L. Ed. 584; Edwards v. Keerzey (U. S.) 24 L. Ed. 793; Gray, Secretary of State, v. Moss (Fla.), *supra;* Gray, Secretary of State, v. Winthrop (Fla.), *supra;* Folks v. Marion County (Fla.), *supra;* State, *ex rel.,* v. Port of Palm Beach, et al. (Fla.), *supra;* Boatright v. City of Jacksonville, 117 Fla. 477, 158 So. 42. In the case of Edwards v. Kearsey (U. S.), *supra,* the Supreme Court of the United States says:

"The provision in the constitution of a state which exempts from sale under execution every homestead not exceeding the value of $1,000.00 is invalid as regards contracts made before the adoption of the constitution."

This court, in the opinion rendered in the case of Boatright v. City of Jacksonville, *supra,* Folks v. Marion County, and State, *ex rel.,* v. Port of Palm Beach District, *supra,* cited with approval, and followed the holdings of the United States Supreme Court, cited above, in finding that the impairment of contracts may be made through constitutional enactments or amendments as well as statutory laws.

Counsel for the respondent as well as counsel appearing before us as *Amicus Curiae* in the instant case, strongly contend that this court should have been controlled in reaching its conclusion in the cases of Boatright v. City of Jacksonville, *supra,* and Folks v. Marion County, *supra,* by the cases of Gilman v. Sheboygan, 2 Black 510, 17 L. Ed. 305; and of Arkansas Southern Railway Co. v. Louisiana & Arkansas Railway Co., 218 U. S. 431, 54 L. Ed. 1097.

In fact it is contended that Mr. Chief Justice DAVIS, in his analysis of the cases so missed the point involved therein

that his conclusions were mistaken and erroneous, were not supported by the holdings of the United States Supreme Court in the cases cited and that by reason of this failure of the writer of the opinion in the Boatright-City of Jacksonville case to discover the real holdings of the United States Supreme Court, the opinions of this court regarding the effect of the adoption of Section 7, Article X, of the Constitution of Florida on contracts made prior thereto, have been and are erroneous. This contention has been made so urgently, and with such apparent confidence that we have again examined the opinions of the United States Supreme Court in both the Sheboygan, and the Arkansas Southern Railway cases, but we do not find any of the holdings and findings in either of the cases such as to cause this court to recede from the findings of Mr. Chief Justice DAVIS in the case of Boatright v. City of Jacksonville.

Even if the conclusion of the court regarding the reasons for the findings of the United States Supreme Court, in the two cases cited by respondents, was a mistaken or erroneous construction as contended, we do not think these decisions are such as would warrant us in following them, instead of the numerous other decisions of the United States Supreme Court, that we have approved and followed in our previous holdings in cases already decided by this court involving the effect of the adoption of Section 7, Article X of the Constitution on the obligations of contracts of bonds issued prior to the adoption thereof.

The case of Gilman v. Sheboygan was a controversy between the owner of lands that had been sold for certain city taxes and the taxing authorities of the city, wherein the complainant, the delinquent taxpayer, was seeking to enjoin the city treasurer from issuing a deed to the property which had been sold for the tax and had not been re-

deemed within the required time. A demurrer to the bill of complaint and the amendment thereto were sustained by the District Court of Wisconsin. In the complainant's bill of complaint he was seeking to question the legality of the tax levy, upon the theory that under the law, the tax was required to be levied upon real estate exclusively, no provision being made by such law for taxing the personal property in the district for the purpose in question. This purpose being to provide for the payment of city bonds issued by the city to aid in the construction of a railroad.

In the year 1854, the Legislature of Wisconsin had passed an Act authorizing the city of Sheboygan to issue bonds, to aid the construction of a designated railroad, the Act providing that the city should annually levy a tax upon all the taxable property of the city to pay the interest on the bonds. The Legislature in 1857 passed another Act which provided that after that date, the annual levy made by the common council of the city of Sheboygan, for the payment of principal and interest on bonds issued or to be issued by said city, to aid in the construction of any railroad, etc., should assess a tax to be levied on real estate, *exclusively*.

After the passage of this Act of March, 1857, the city levied a tax for the debt service on bonds which had been issued prior to the passage of the Act providing that the tax should be levied on real estate only for bond services. It was claimed in the bill of complaint that the levy of the bond debt service tax, on real estate only and the law authorizing it were void, because it discriminated in favor of personal property, which under such law was not taxed for such debt service.

It appears from the record that before the demurrer to the original bill was disposed of, or possibly before such

demurrer was interposed, the complainant amended his bill of complaint and claimed in such amendment that the Act of 1857, and the tax levy provided therein were void, because the Act of 1854, which authorized the issue of bonds, had provided for a levy of taxes on *all* property of the city for the payment of bonds, and that its provisions constituted a contract with the bondholders which the Act of March, 1857, sought to violate.

In disposing of the last mentioned proposition raised in the amended bill of complaint the Supreme Court of the United States, in an opinion written by Mr. Justice Swayne, it was said in 17 L. Ed. (U. S.), page 307 (Text): .

"Admitting the State could enter such an engagement, there is no evidence that it did. This fact should never be assumed, unless the language used be too clear to admit of doubt. *If the agreement existed the complainant is not in a position to make the question. There is no allegation that the tax levied is insufficient. We hear of no complaint from the bondholders. They are not before us. It does not belong to the complainant vicariously to enforce this contract and protect their rights.*" (Italics supplied.)

It would seem from the foregoing observation of the court in the opinion written by Mr. Justice SWAYNE, that had the court had before it a party complainant that was a proper party to test the contract right of the bondholders to have the tax levied that was provided and required when the bonds were issued, its holding on this phase of the case would have been in accord with the numerous other opinions of the same court both before and since the Sheboygan case. It will be seen that the reason the court gave for deciding on the proposition raised in the contention made in the amended bill of complaint were: first, there was no sufficient showing before it that there was such a

contract right in existence as was claimed to have been made with the bondholders, and, *second,* the complainant, Gilman, was not in a position to complain of the impairment of the bondholder's contract. It was not the complainant's contract right that was violated, if any was violated. There was nothing to show that there was or would be insufficient funds to meet the payments on bonds even if complainant had been a proper party to complain.

It will be seen that the Sheboygan case is not one of such striking similarity to the case at bar or to the case of Boatright v. City of Jacksonville, *supra,* or the case of Folks v. Marion County, *supra,* as would constrain this court to follow its holding.

In the case now before us we have a relator which holds the bonds of a Special School Tax District, amounting to a large sum of money. Quite a substantial part of both principal and interest being past due and unpaid. The law and the Constitution when the bonds were issued required a levy on *all* taxable property to provide the funds to pay interest and retire the principal of the bonds as they matured. The amount that may be realized from the tax levy made on all the property in the district including homesteads will not raise sufficient revenue to care for the debt service on the bonds in the district for the fiscal year, October 1, 1935, to September 30, 1936. This relator is seeking to have the respondent, as tax assessor, assess all homesteads with the tax levied to take care of the payments on the bonds issued long prior to the time the "Homestead Tax Exemption Amendment" was adopted. We see no such parallel in the rights of parties, nor in the question raised, in the case we have before us and the case so strenuously relied on by the respondent, to have justified us in taking the Sheboygan case as a controlling precedent in the cases

we have considered in the past nor in the present case, where the effect of the homestead Tax Exemption Amndment has been considered and our holdings set forth in the several opinions rendered.

We have likewise again considered the bearing the case of Arkansas Southern Railway Company, *et al.,* v. Louisiana and Arkansas Railway Co., 218 U. S. 431, 54 L. Ed. 1097, might have upon the questions involved not only in the case at bar, but also in the other cases decided by us, in which it is contended we did not adopt and follow the holdings announced by the Supreme Court of the United States in the case referred to above. We have also examined the case in the State court, reported in 46 So. page 994, where the facts and the real issues involved, were given. After such review of this case we are convinced this court was correct in its view, that there is nothing in the case that should have led us to any other conclusion than that which was reached by us and announced by Mr. Chief Justice Davis in the case of Boatright v. City of Jacksonville, *supra.*

Does the failure of the respondent, tax assessor, to assess the 35 mills levied by the county commissioners of the county, to be made on all taxable property in Special Tax School District No. 1 of the county for debt service purpose on the bonds described in the alternative writ as held by the relator, impair the obligations of the contract of such bonds? We think it does. As was said in the case of State, *ex rel.,* v. Port of Palm Beach District, *supra* (decided this term of court, and not yet reported), "to impair" has been defined as meaning to make worse, to diminish in quantity, value, excellence or strength; to lessen in power, to weaken. Whatever legislation lessens the efficacy of the means of enforcement of the obligation is

an impairment. Also if it tends to *postpone* or retard the enforcement of the contract it is an impairment." Citing authorities. Continuing we said in the case above referred to, as follows:

"If the provisions of Section 7, Article X, of the Constitution of Florida are to be considered as being operative in eliminating from taxation for debt service on bonds issued by Lake Worth Inlet District, homesteads located in the District of less value than $5,000.00, then there will be a lessening of the efficacy of the means of the enforcement of the obligations of the bond contract. These bonds were issued with the clear legal requirement by a valid enactment of the Legislature, that *all* the then taxable property in the district should be taxed to provide for the payment of both interest on, and principal of the bonds."

An enforcement of the provision of Section 7, Article X, exempting homesteads of less than $5,000.00 in value by refusing to assess against them the millage levied for debt service on bonds issued by Special Tax School District No. 1 of Lee County, Florida, prior to the adoption of such constitutional provisions will impair the obligation of the contract of relator's bonds within the purview of Section 10, Article 1, of the Constitution of the United States.

It will subserve no valuable purpose to list again the many cases already listed in previous opinions of this court sustaining this conclusion. We would therefore refer to the opinions of this Court in the case of State, *ex rel.,* v. Port of Palm Beach District, *supra,* Folk v. Marion County, *supra,* and Boatright v. City of Jacksonville, *supra,* for the list of the many cases sustaining the proposition stated above.

We take the view in this case, that the Tax Assessor has simply a ministerial duty to perform in assessing and en-

tering upon the tax rolls of the county the tax upon all the taxable property as levied by the county commissioners. He has no discretion to determine that homesteads are exempt from taxation, in the face of the provisions of Section 10, Article I, of the Constitution of the United States. Under the allegations of the alternative writ of mandamus, which are admitted by the motion to quash, the respondent's attitude seems to be that he has the duty to determine whether or not a tax for any purpose can be levied against a homestead.

From the foregoing observations it will be seen that theory number one, advanced by the respondent in his motion to quash the alternative writ of mandamus is untenable.

The second theory advanced by the respondent to sustain the motion to quash the alternative writ of mandamus, is that the relator should seek to require an increased levy on non-homestead land, rather than the existing levy against all the taxable property in the district including homesteads, enforced.

We do not think this contention or theory of the respondent contains any merit. In the first place, under the bondholders' contract there was and is to be annually levied under the provision of Section 17, Article XII of the Constitution and under Section 593 R. G. S., 735 C. G. L., a tax on all the taxable real and personal property in the district to the amount of five mills on the dollar at the time the bonds of relators of November, 1913, were issued, and for those issued in April, 1925, there was required under the law made part of the bond obligation, a levy of millage on all such property, sufficient to meet the debt service requirements. We have already said in this opinion that the above mentioned obligations of relator's bond contracts

could not be impaired by the provision of Section 7, Article X, of the Constitution of Florida, and therefore the relator was not, and is not required to do other than seek to have his contract rights enforced and the source of the revenue provided for in the contract made use of by the taxng authorities of the district. Then, too, the tax levy to meet the bond contract payments has already been made upon the property which under the contract was made liable to taxation for such debt service purposes. What guarantee has the relator, that the respondent would obey an order of the county commissioners fixing an increased levy on non-homestead property, even if such action on the part of the county commissioners is authorized under the law? Under the facts and circumstances set forth in the allegations of the alternative writ of mandamus, the bond-holder does not have the burden of discovering other sources of taxation for funds to pay the bond obligations of the district. Especially so long as there is still in existence taxable property in the district of the class and kind required under the law to be taxed when the bonds were issued. To require the relator as a bondholder, protected under the inhibition prescribed in Section 10, Article 1, of the Constitution of the United States, to have the taxing authorities of the county make the questionable experiment of taking from homesteads the burden of taxation for debt service on the bonds of the district by relieving the homestead land from such tax and increasing the millage on non-homestead lands in proportion, would in itself result in such a possible and probable delay and postponement of the payment of the interest and principal on his bonds as to work an impairment of the obligation of the bond contract. The relator is certainly not required at the behest of the tax assessor to seek such a questionable

and unstable remedy, instead of requiring him to perform a plain ministerial duty directed by the statute.

Even if, after discovery of other sources of revenue for bond retirement by the Legislature of the State or the authorities of the taxing units of the State, the holders of bonds of such units could under the law, be required to forego their right to have the levy of the tax required under the law and made part of such bond contract, they could not be required to initiate proceedings to make such newly discovered source of revenue available.

In the case of State v. City of Daytona Beach, 118 Fla. 773, 160 Sou. 501, we were considering a case wherein the officials of the City of Daytona Beach had prepared or were preparing a budget for the year 1935, but had failed to appropriate any sum of money for the payment of its bonded debt, and failed to prepare a tax assessment roll covering real and personal property, and that the officials of the city had stated they did not intend to prepare an assessment roll, "as items included as expense in the budget will be met from other forms of taxation," and it was not their intention to levy an ad valorem tax for the fiscal year 1935 for bonds or any other purpose.

An original mandamus was brought in this court by certain holders of bonds of various issues of the City of Daytona Beach, against such city, seeking to have an assessment roll prepared on all real and personal property within the municipality, upon which should be indicated property subject to taxation for the respective issues of bonds, and to require the city manager and city commissioners to revise, modify and include in the budget for the fiscal year of 1935 a sum of money equal to that which would accrue to the relators, and fix and determine the tax millage to be levied for debt service on the several bond issues. In

passing upon the demurrer to, and motion to quash, the alternative writ of mandamus in the case we, speaking through Mr. Justice DAVIS, said among other things, the following:

"The right of a municipal corporation to appropriate money to pay its debts out of other and different sources of revenue than those particularly pledged in its bonds, must be conceded. But a municipal corporation has no right to refuse to discharge its contractual bounden duty to so seasonably exercise its already pledged taxing power in the manner and form as provided by statute as to anticipate and provide for the payment of its obligations at maturity, so long as it is in default in any of its obligations. *Nor can it legally refuse so to act, until it has not only provided for but actually collected and appropriated sufficient funds from such other revenue sources adequate to render an exercise of its formally pledged ad valorem taxing power unnecessary during the particular period for which such pledged taxing power would otherwise be required by existing law to be exercised, absent the appropriation of suffcient funds from other revenue sources."* (Italics supplied.) 160 So. 505 (Text).

In the same case we said, speaking again through Mr. Justice DAVIS: "Neither the State nor a public corporation acting under a taxing power delegated to it by the State has the right to *hinder, delay, impede or embarrass its creditors by a withdrawal or refusal to exercise a taxing power already given by law and obligated to be exercised* in due season for the protection of its creditors, until full, complete and adequate substituted funds equivalent to the amount pledged to be raised by its obligated taxing powers have been already raised and appropriated in satisfaction of the claims of creditors, who otherwise would be entitled to

invoke the exercise of taxing powers already given by law. To hold otherwise would be to countenance an unconstitutional impairment of a contract in violation of Section 10, Article I, of the Constitution of the United States."

We think the above holding applies with equal force to the proposition of relieving homestead lands from the levy of tax for debt service on bonds issued before the adoption of the "Homestead Tax Exemption Amendment." Before the homestead lands can be exempt from such tax for debt service the holders of the bonds affected thereby may require that funds sufficient from other sources of revenue be *actually collected and appropriated* adequate to render the ad valorem tax for such purpose on homestead land unnecessary. Under this doctrine the relator could not be required to seek an increased millage on non-homestead lands, nor in a proceeding to have the tax for debt service on his bonds levied and assessed need, or must he allege that he has sought to have an increased millage on non-homestead lands. Thus the second theory upon which respondent bases his motion to quash the alternative writ of mandamus, fails.

There is another proposition advanced by the respondent, and which we will briefly consider. It is contended that the motion to quash the alternative writ should be granted for the reason that as to some of the bonds there can only be levied a tax of five mills on the dollar for debt service, and that therefore there can be no peremptory writ ordering a levy of tax for 35 mills. It is true that as to such bonds as were issued prior to November, 1924, there can only be a levy of five mills on the dollar for the payment of the interest and principal on the bonds, unless the amendment to Section 17, Article XII, of the Constitution of Florida, requiring that a sufficient millage be levied for

debt service on bonds issued, or to be issued, was intended to be retroactive and apply to the bonds of Special Tax School District No. 1, that had been previously issued. However, as we view the case, it is not necessary for us to determine whether the increased millage under the amendment to Section 17, Article XII, *supra,* is retroactive or not. It appears from the allegations of the alternative writ that the relator holds quite a large number of bonds issued in April, 1925, after provision was made for a millage sufficient to provide the funds necessary to pay the interest and principal on the bonds. Therefore, so far as we are advised, a levy of only five mills has been made for the debt service on the bonds issued prior to 1924 and the entire additional millage of 30 mills is to cover the debt service on bonds issued subsequent to the constitutional amendment providing for the levy of sufficient millage to raise the necessary amount for the payment of interest and principal of bonds. The 35 mills levied by the County Commissioners is the combined levy made for all the issues. The millage levied for each assessment is levied on the same property as is the millage for all the issues.

Therefore we hold that the contention of the respondent that, because one of the bonds issues only permitted a tax of five mills, the alternative writ of mandamus should be quashed, and a peremptory writ requiring the levy of 35 mills for all the issues denied, is untenable.

We have been given much assistance and valuable information through the able briefs filed by counsel for the respective parties and by counsel appearing as *amici curiae* presenting views on each side of the subject involved herein. We were also enlightened by the able oral arguments made, not only in the instant case, but also in the other cases involving the "Homestead Tax Exemption Amendment,"

heard at the same time. The fact that the homestead lands of less than $5,000.00 cannot be exempt from all taxation but must be taxed with other property when necessary to prevent impairment of obligations of contract of bonds issued prior to November 6, 1934, is necessarily disappointing to many individuals who thought and were made to believe that their homesteads were to be and could be relieved from all taxes by the adoption of Section 7, Article X, of the Constitution. However, the contracts made by the taxing units of the State in issuing bonds, which under statutory provisions were to be paid by a levy of taxes on *all* property including homesteads, cannot be impaired even by an amendment to the State Constitution adopted subsequent to such contract. The Constitution of the United States which is the "supreme law of the land," prohibits any effect being given to such an enactment. These contracts are obligations that must be met, from the sources of taxation provided for the raising of the necessary funds, if possible, unless the necessary funds are *legally provided from some other source.*

It seems perhaps to us today that the people of the State in those hectic boom days entered into a wild orgy of extravagant spending, and that while a great deal of the spending of public funds derived from bond issues, voted in many if not all the taxing units, was spent for necessary and useful purposes, yet there was a great deal spent for wild and useless purposes. However, the people by their votes *demanded* these expenditures, and *assumed the tax burdens attendant thereon.* While it is doubtless true, as has been contended, that the bonding companies encouraged, advised and induced many of these bond issue programs, yet this fact is not sufficient to authorize the abandonment, repudiation or the impairment of the obligations of the con-

tracts of any such bonds. Therefore this court as the *law interpreting authority of the State,* and as the *arbiter* of all questions arising between parties to contracts, has, in the conscientious discharge of both these functions, reached its conclusions regarding the propositions raised relative to the liability of homestead lands for taxation under the present Constitution of Florida, for debt service on bonds issued prior to the adoption of Section 7, Article X, of the Constitution of Florida, which conclusions have been set forth in this and the other cases cited herein.

We are of the opinion that the motion to quash the alternative writ of mandamus herein should be overruled, and it is so ordered.

WHITFIELD, C. J., and TERRELL, and DAVIS, J. J., and LEWIS, Circuit Judge, concur.

BROWN, J., concurs specially.

BUFORD, J., disqualified.

BROWN, J. (concurring specially).—In the main I concur with what is said in Judge Campbell's able opinion, and in the conclusion reached, but there are some expressions therein which I cannot fully agree with. For instance my view is that while the homestead exemption amendment cannot operate to withdraw homestead property from taxation for the payment of bonds issued before the amendment was adopted, where, as here, there was pledged for their payment the annual levy of a sufficient tax on all taxable property (which then included homesteads) unless some other "adequate means" is first definitely provided, entirely sufficient to raise the necessary revenue for the debt service which would otherwise be lost by omitting homestead property, *yet, if and when such other adequate source of revenue is definitely provided,* I think homesteads could then be omitted from the rolls without waiting for the sub-

stituted taxes thus levied to be actually collected and paid over. But it is not made to appear that any other adequate means of meeting the obligations here involved has been provided. On the other hand, it appears that the present omission to tax homestead properties would inevitably operate to impair the obligation of the bond contracts here involved under existing conditions. As far back as Columbia County v. King, 13 Fla. 451, this court said: "When a county issues its bonds under a statute which provides the time and manner of discharging them * * * the Legislature cannot, by repealing the Act or changing it, limit the amount of taxes to be levied to a rate insufficient to raise the amount necessary to meet the obligation, *unless other adequate means are provided*. Such a law impairs the obligation of the contract."

It is ably and earnestly contended by counsel for respondent, and in the brief of *amicus curiae,* that these bond contracts were issued subject to reserved power of the sovereign State to enact future laws or constitutional amendments designating what shall be deemed taxable property, and that taxing units cannot by contract limit or prevent the exercise of this sovereign state power. Admitting the force of this contention as a sound general rule, it must not be forgotten that this sovereign state power is itself limited by the paramount power of the national Constitution to this extent—that the State cannot pass any law (and a constitutional amendment is a law) which impairs the obligations of contracts. So, these bonds, while issued and purchased with notice of the State's sovereign power above referred to, were also issued with notice of the limitation of that power, which limitation prevents the state from passing any statute or constitutional amendment which would apply to contracts, previously and lawfully made, in

such a way as to substantially and materially impair the obligation of such existing contracts, although such statute or constitutional amendment would be entirely valid and effective as applied to contracts entered into after its adoption. This provision of the federal Constitution prohibiting any State from impairing contract obligations formed a part of the Constitution as framed by the Convention of 1787 and thereafter ratified and adopted by the several States. It was not added thereto by way of amendment. The experience of a hundred and fifty years has proven the wisdom of our forefathers in giving this provision a place in our national organic law. So, while all contracts are entered into in the light of and subject to the State's sovereign power in matters of taxation, they are also entered into in the light of the limitation placed on the exercise of that power by the contract clause of the national Constitution.

It is not every exemption from taxation which would impair the obligations of pre-existing contracts. The effect of some exemptions might be so neglible as not to work any impairment. But where the property exempted from taxation by any State law takes away such a large proportion of the taxing powers which had theretofore been pledged to secure the payment of contracts already lawfully made, as to *materially* impair the obligation of such contracts, then the paramount authority of the contract clause of the national Constitution becomes operative and requires that such state law be so construed and applied if possible as not to effectuate such impairment. While I have read with care the able arguments of counsel to the contrary, the conclusion above reached seems to me to be inescapable and inevitable.