**AMERICAN CAN COMPANY, a corporation, v. CITY OF TAMPA, a municipal corporation, et al.**

**CITY OF TAMPA, a municipal corporation, et al., v. AMERICAN CAN COMPANY, a corporation.**

14 So. (2nd) 203                                        June Term, 1942
December 31, 1942                                        En Banc
Rehearing Granted January 27, 1943
On Rehearing Granted April 30, 1943

·*Whitaker, Whitaker & Terrell* and *Harry B. Terrell,* for Petitioner American Can Company in case No. 1 and for Respondent in case No. 2.

*Alonzo B. McMullen,* and *Ralph A. Marsicano* for Respondents City of Tampa in case No. 1 and Petitioners in case No. 2, and *R. J. Duff* for Petitioners J. G. Bedeingfield, George V. Booker and J. W. Dupree in case No. 1, *Paul Game* for Petitioners, Hillsborough Investment Company and Collier Florida Coast Hotels, Inc., in case No. 1, and for Respondents in case No. 2.

WHITFIELD, J.:

A suit was brought in the circuit court by American Can Company, a corporation, seeking to have the city officials enjoined from enforcing occupational license taxes and ad valorem taxation of property used in an "industrial plant" in the manufacture of steel vessels in Hillsborough County, Florida, to pay statutory contract bonds of the city issued before the adoption in 1930 of added Section 12, Article IX of the Florida Constitution under which the tax exemption is claimed, the theory of the defendants being that such ad valorem tax is levied for payments on the bond contract obligation of the city which is protected by the Federal Constitution.

The defendants moved to strike the portion of the bill of complaint claiming exemption from license taxes, to dismiss the bill of complaint for want of equity and for a better bill of particulars.

Several property owners and tax payers of the city and one bondholder petitioned to intervene as defendants. Plaintiff moved to strike the petitions to intervene.

By one order the circuit court denied defendants' motions to dismiss and for better particulars, sustained plaintiff's motion to strike each of the petitions to intervene and sustained defendants' motion to strike the allegations and prayer of the bill regarding occupational license taxation without prejudice to plaintiff's right to litigate the question of whether or not the amount of occupational license taxes assessed against plaintiff are arbitrary and unreasonable.

Two petitions for interlocutory certiorari were filed in the cause, one by the plaintiff as to license taxes and one by the several defendants joined by the petitioners to intervene as to all the other matters.

Petitioners, defendants below, present as a question: "Is an industrial plant engaged primarily in the manufacture of steel vessels exempt from the payment of taxes levied for the payment of principal and interest on original obligation bonds of a municipality which were outstanding at the time the constitutional amendment allowing exemption was adopted?"

Plaintiff petitioner poses this: "Is the exemption from taxation contained in Section 12, Article IX of the State Constitution limited to ad valorem taxation or does the exemption include other forms and classes of taxation, particularly license taxation?"

With reference to *ad valorem* taxation, the Florida Constitution provides that "the Legislature . . . shall prescribe such regulations as shall secure a just valuation of all property, both real and personal, excepting such property as may be exempted by law for municipal, educational, literary, scientific, religious or charitable purposes." Amended Section 1, Article IX. "The property of all corporations, except a corporation which shall construct a ship or barge canal across the peninsula of Florida, if the Legislature should so enact, whether or hereafter incorporated, shall be subject to taxation such property be held and used exclusively for religious, scientific, municipal, educational, literary or charitable purposes." Section 16, Article XVI. Exclusive use of property

for any one of the above stated purposes warrants exemption from ad valorem taxation. See Lummus v. Miami Beach Congregational Church, 142 Fla. 657, 195 So. 607.

Other exemptions from taxation are provided for. Added Section 12, Article IX, of the Constitution of the State of Florida, adopted November 5, 1930, is as follows:

"For a period of fifteen years from the beginning of operation, all industrial plants which shall be established in this State on or after July 1, 1929, engaged primarily during said period in the manufacture of steel vessels, automobile tires, fabrics and textiles, wood pulp, paper, paper bags, fiber board, automobiles, automobile parts, aircraft, aircraft parts, glass and crockery manufacturers and refining of sugar and oils, and including by-products or derivatives incident to the manufacture of any of the above products, shall be exempt from all taxation, except that no exemption which shall become effective by virtue of this amendment shall extend beyond the year 1948."

"The exemption herein authorized shall not apply to real estate owned and used by such industrial plants except the real estate occupied as the location required to house such industrial plants and the buildings and property situated thereon, together with such lands as may be required for warehouses, storage, trackage and shipping facilities and being used for such purposes."

By the terms of the quoted organic section the exemption from taxation extends only to "industrial plants . . . engaged primarily . . . in the manufacture of steel vessels" and other stated products and commodities, "and by-products or derivatives incident to the manufacture of any of the above products," including "the real estate occupied as the location required to house such industrial plants and the buildings and property situated thereon, together with such lands as may be required for warehouses, storage, trackage and shipping facilities and being used for such purposes."

Plaintiff petitioned in effect contends that the decision in Fleischer Studios, et al., v. Paxson, et al., 147 Fla. 100, 2 So. (2nd) 293 is controlling in this case.

In the Fleischer case Section 14, Article IX was applicable which section is more specific and comprehensive in its exemptions from taxation than is Section 12, Article IX. In that case the allegations referring to the importation from another state of personal property of great value and of peculiar nature and uses for suggested scientific purposes in the studio, and in effect stating that such property was assessed for ad valorem taxation although admittedly not subject to public debt service taxation, which allegations together with others required the giving of an opportunity for further showing of tax exemptions instead of dismissing the bill of complaint, thereby warranting the reversal for appropriate proceedings in that case. The opinion states "Every case must be determined on its own essential facts and the controlling law applicable thereto. When a tax exemption is claimed it must be shown that the dominant law is not violated by the claimed exemption."

In this case the "industrial plant" and its incidents are established upon land that was subject to the municipal bond taxation. The manufacturing engaged in on the land is purely a business enterprise; and there is no sufficient showing of a legal right of exemption of the property from authorized taxation to pay municipal contract obligations for which taxation the land was subject when the tax exemption amendment of the Constitution was adopted, the contract obligation being secured by the dominant Federal Constitution. The exemption claimed in this case is under Section 12, Article IX.

The bill of complaint contains allegations designed in effect to show that after the adoption in 1930 of Section 12, Article IX of the Florida Constitution and relying thereon, plaintiff acquired the fee simple title to described land in Tampa, Florida; that the greater portion of such lands were marsh lands of very small value that were filled in and the plaintiff's industrial plant, buildings and extensions established thereon engaged primarily in the manufacture of steel vessels; that is to say, metal containers, commonly known as tin cans, which are made from steel and tin in the proportion of 98½ per cent steel and 1½ per cent tin, and are used in canning food and liquids for human consumption; that

required and used in and about the manufacture of the steel vessels, plaintiff owns and has located on the described premises personal property consisting of numerous specified classes of articles and fixtures and also manufactured product or can stock; that 200 or more employees are engaged with a weekly payroll of $7,500.00 and plaintiff manufactures annually about 300,000,000 steel vessels and cans. There are allegations and figures as to the assets and bonded debt of the city and the gradual reduction of such debt; that the city is a solvent and growing city, with no defaults in its bond payments and can pay all bonds as they mature "without taxing plaintiff or its properties until the year 1949;" that on December 14, 1937 plaintiff made and filed with the defendant city tax assessor, its written claim for exemption from all taxation by defendant city until 1949; that defendants, contrary to the constitutional amendment and without authority of law have levied stated taxes on said premises for the years 1938, 1939, and 1940 which have been paid, that taxes assessed on the premises for 1941 in the amount of $2,322.46 have not been paid; that said $2,322.46 taxes assessed on the tax rolls of the city is a cloud on plaintiff's title though void; that plaintiff has paid stated license taxes for the years 1936 to September 30, 1942 inclusive; that plaintiff is informed, believes and fears that defendants will continue their past course of conduct and will hereafter tax plaintiff and its properties, as above set forth, for each of the years 1942 to 1948, inclusive, and will exact and require the payment by plaintiff of similar taxes for said years, or will penalize plaintiff and its properties for non-payment thereof, unless defendants are restrained and enjoined by this Honorable Court from so doing; that plaintiff's construction and operation of said industrial plant has increased "the business activities of the State with consequent additions to the population and the development and utilization of the natural resources of the state for the general welfare" and, thereby, the defendant City, the County of Hillsborough and the State of Florida, have reaped and will continue to reap, pro tanto, benefits and advantages from the construction and operation of plaintiff's industrial plant, and it is, therefore, inequitable

and unjust that the defendant City should deny to plaintiff the exemption provided by said amendment; that it was never anticipated by the holders of the above mentioned bonds issued by the defendant City that said real estate now owned by plaintiff would be filled in, improved and increased in value as plaintiff has done and it was never anticipated by the holders of said bonds that personal property having a value for purposes of taxation would be located upon said premises as plaintiff has done.

It is prayed that the assessment of $2,322.46 for the year 1941, be set aside as a cloud on plaintiff's title to said premises; that the city tax assessor defendant "be restrained and perpetually enjoined from assessing the premises hereinbefore described and the personal property situate thereon for taxation for any year and any purpose whatsoever until the year 1949; that the city and its officers "be restrained and perpetually enjoined from collecting any tax whatsoever, including occupational license tax, from plaintiff until the year 1949," and "be restrained pendente lite from enforcing or attempting to enforce by foreclosure, sale or otherwise, the taxes assessed against said premises for the year 1941."

The above condensed and other allegations of facts which are properly admitted by the motion to dismiss, do not show illegality in the assessments of ad valorem taxes for contract debt obligations issued before the exemption amendment was adopted. The "industrial plant" of plaintiff is located on lands that are subject to taxation for the debt payments. Imposition of license taxes upon the operation of the industrial plant is not shown to be illegal. Section 12, Article IX of the Constitution exempts the "industrial plant" from ad valorem taxation for all governmental purposes except those for statutory bond contract obligations which are controlled by the Federal Constitution; and it is not shown that the tax levy is not authorized or that the assessment is not legally made in proper proportion with other taxable property for continuing debt service, for which taxes the land on which the industrial plant and structures are located and established was proportionately liable when Section 12 of Article IX of the Constitution was adopted.

Allegations of legal conclusions are not admitted by a motion to dismiss. Only matters well pleaded are so admitted.

Increase in uses and value of lands and in the development and expansion of business enterprises, motivated the adoption of the constitutional amendment which affords exemption from taxation to the extent that the state authority is controlling. The State has not provided other means to pay municipal contract bond obligations for which the lands and improvements thereon are liable to taxation.

When property is claimed to be exempt from taxation a legal right to the exemption should be clearly shown. The mere fact that other property which is subject to a tax is sufficient to pay the entire tax, does not exempt any property from the tax. Others could claim a similar right. Neither the State nor the municipality has made other ample and certain provisions for paying the municipal contract debt; and the city has not refrained from enforcing the tax which is the primary authorized means of payment.

Section 12, Article IX of the Constitution applies only to exemptions from property taxation, and extends to "all taxation" of the stated property as to which the state authority is controlling. The federal authority is controlling in securing contract obligations against impairment by state laws. The section has no reference to excise taxation such as license taxes affecting the operation of the "industrial plant" and its lawful incidents. Section 12, Article IX, does not expressly or by implication forbid excise or license taxation.

Tax paying petitioners to intervene as defendants in the cause in the circuit court should have been allowed to intervene since they have a right to judicial process to require all property subject to the tax to be duly assessed to the end that taxation for any lawful purpose shall be equal and uniform and predicates upon "just valuation" as required by Section 1, Article IX. State ex rel. Dofnos Corporation v. Lehman, 100 Fla. 1401, 131 So. 333; Liggett Company v. Lee, 288 U.S. 517, 53 Sup. Ct. 481, 77 L. Ed. 929, 85 A.L.R. 699; Hackney v. McKenny, 113 Fla. 176, 151 So. 524; Draughon v. Heiman, 124 Fla. 24, 168 So. 838; State ex rel. Miller, v. Doss, 146 Fla. 752, 2 So. (2nd) 303. The bond holding petitioner should

have been allowed to intervene since he has a direct interest in the performance of the bond contract by the means in force when the contract was made unless by law he is made secure by other adequate and certain means. In this case the municipality is pursuing the course afforded by law when the bonds were issued, and no law or sufficient equitable consideration is shown to deny the city its right to proceed in the authorized manner to perform its contract obligation as required by law. Whether other municipalities in the State have and pursue such rights is not material. This case is controlled by the legal provisions and principles cited and applied in the cases of Gray v. Moss, 115 Fla. 701, 156 So. 262; Gray v. Winthrop, 115 Fla. 721, 156 So. 270; Folks v. County of Marion, 121 Fla. 17, 163 So. 298; State v. Carey, 121 Fla. 515, 164 So. 199; State v. Port of Palm Beach District, 121 Fla. 746, 164 So. 851; State v. Boring, 121 Fla. 781, 164 So. 859; Long v. St. John, 126 Fla. 1, 170 So. 317; State v. City of Sanford, 128 Fla. 171, 174 So. 339; Yowell v. Rogers, 128 Fla. 881, 175 So. 772; State v. Doss, 146 Fla. 752, 2 So. (2nd) 303; and other like cases.

An interlocutory certiorari will be issued in the second stated case and thereupon the portion of the order of the circuit court denying the defendants' motion to dismiss the bill of complaint is quashed. The order denying the several petitions to intervene is quashed. As to order striking matters relating to license taxes the petition is denied. The cause is remanded for appropriate proceedings consistent with this opinion. It is so ordered.

BROWN, C. J., TERRELL, BUFORD, CHAPMAN, THOMAS and ADAMS, JJ., concur.

### ON PETITION FOR REHEARING

TERRELL, J.:

American Can Company filed its bill of complaint in the Circuit Court to restrain the City of Tampa from collecting ad valorem and excise or license taxes on certain properties owned by it and used as an industrial plant as contemplated by Section 12 of Article IX, of the Constitution. The City moved to strike that portion of the bill relating to excise

taxes and to dismiss the entire bill for want of equity. Several taxpayers and a bond holder petitioned to intervene and be made parties defendant. The trial court denied the motion to dismiss but granted the motion to strike the allegations relating to excise taxes. The petitions to intervene were also denied.

American Can Company entreats us to review by certiorari that portion of the chancellor's decree striking the allegations of the bill of complaint relating to excise taxes. The City of Tampa and petitioners entreat us to review that portion of the chancellor's decree denying the petitions to intervene and the motion to dismiss the bill of complaint.

Epitomized, American Can Company seeks an adjudication of this question: Does the exemption from taxation provided in Section 12 of Article IX, of the Constitution apply to both ad valorem and excise or license taxes or is it limited to ad valorem taxes? The City of Tampa and the petitioners to intervene seek an adjudication of the question of whether or not an industrial plant as contemplated by Section 12 of Article IX, of the Constitution is exempt from taxes to pay the principal and interest on bonds that were outstanding at the time the said constitutional amendment was adopted.

In a very comprehensive opinion prepared by Mr. Justice WHITFIELD and filed December 31, 1942, this Court held that Section 12 of Article IX was limited in its application to ad valorem taxes and had no application to excise or license taxes. We also held that bond contracts of the City of Tampa outstanding at the time said amendment was adopted were protected by the contract clause of the Federal Constitution and that the industrial plant of American Can Company was subject to taxes to pay the principal and interest of such bonds.

On petition for rehearing, the case has again been reviewed and a majority of the Court have reluctantly reached the conclusion that this holding was erroneous. Section 12 of Article IX in effect provides that for a period of fifteen years, certain industrial plants established in this State on or after July 1, 1929, "shall be exempt from all taxation" except that no such exemption shall extend beyond the year 1948. The amend-

ment names the businesses such plants must engage in and they are not to be those in competition with businesses already here.

What effect should be given to the words "shall be exempt from all taxation" as employed in the amendment? The answer to this question will determine the first question with which we are confronted. Ad valorem and excise taxes are two separate and distinct taxes authorized by different provisions of the Constitution (Sections 1 and 5, Article IX, Constitution of Florida) but the word "taxation" is a generic term and has been frequently construed to include both when not qualified. In City of Jacksonville v. Continental Can Company, 113 Fla. 168, 151 So. 488, we held that Section 12 of Article IX should be construed to effectuate the intent of the people in approving it. If this rule is to guide us other rules of interpretation can shed little if any light on our interpretation. A literal interpretation can leave no doubt that both ad valorem and excise or license taxes were included in "all taxation." The fact that the amendment speaks in the imperative and the fact that its purpose was to induce the establishment of industrial plants in Florida not to compete with those presently here strengthens rather than detracts from the literal interpretation.

In his message to the 1929 session of the Legislature the Governor strongly advocated the amendment in question as a counterpart to our agricultural development, to utilize our excess labor and to enlarge the home market for our produce. He limited his recommendation to industries not competing with those already in the State and recommended that they be relieved from taxes for a period of years. The amendment in other words was an outright bid to a species of business not heretofore located in Florida to come and enjoy freedom from "all taxation" for a period of fifteen years. Another significant fact is that Section 14 of the same article exempting moving picture studios from taxation and adopted four years later limited the exemption to "all ad valorem taxation."

It appears from the Senate Journal that as originally introduced in the Senate, the amendment in question provided exemption from "all taxation, including privilege and license

taxes of every character." The words "privilege and license taxes of every character" were stricken by amendment leaving exemption from "all taxation" without qualification as to ad valorem or excise taxes. Admitting for argument that it would be reasonable to say that in adopting this amendment, the Legislature intended to limit the exemption to ad valorem taxes, it would be just as reasonable to say that the words of the amendment were superfluous since exemption from "all taxation" was retained and the latter would certainly be in harmony with the purpose of the amendment. We cannot escape the conclusion that exemption from "all taxation" means exemption from both ad valorem and excise taxes for revenue purposes.

Fundamentally there is a clear distinction between an excise tax and a general (ad valorem) tax though the decisions and statutes frequently disregard this distinction. The nomenclature employed by the Legislature is not necessarily conclusive. If the tax is imposed solely or primarily for the purpose of raising revenue and merely grants the person taxed the right to conduct a business or profession, it is not an excise but is a general tax regardless of the name by which it is called but if the tax is imposed for nothing more than the cost of issuing the license and for inspecting and regulating the business it is an excise tax regardless of the name by which it may be designated. If the object of the tax is to pay the cost of issuing the license and for inspecting and regulating the business and a limited revenue is incidentally raised, this alone will not always deprive it of its excise character. If the business is one that does not involve public health, comfort, safety, morals or welfare, an excise tax for inspecting and regulating cannot be imposed, but it is nevertheless subject to an occupation tax for raising revenue, barring constitutional exemption. If on the other hand, the business is deemed inherently dangerous to public health or morals and requires a larger excise tax than is imposed on other occupations, it may be imposed under the police power and may not be called a general tax. Since the amendment speaks in the imperative, was limited to a period of years, and was designed to attract a particular class of industries

to the State, we think it exempts from excise taxes designed to raise revenue, but that it does not exempt from such a tax for inspection and regulation and the cost of the license.

We rested the answer to the second question on the premise that bonds of the City outstanding at the time American Can Company made its purchase and erected its industrial plant were protected by the contract clause of the Federal Constitution and to relieve it of taxes to pay interest and sinking fund on such bonds would be violative of the contract clause of the Federal Constitution. Folks v. Marion County, 121 Fla. 17, 163 So. 298, and other decisions construing the homestead amendment (Section 7 of Article X of the Constitution) were relied on.

There might be substance to this contention if these bond contracts were in fact impaired by the exemption in question. The people have a right to make reasonable exemptions from taxation if contract rights are not impaired thereby. The record shows conclusively that the exemption in this case does not have such effect. When the lands in question were purchased by American Can Company, they were marsh or overflowed lands of speculative value and were assessed at a negligible sum. Acting on the invitation offered by the amendment, American Can Company improved its lands, erected a valuable industry thereon in which it employs more than 200 workers and has a weekly payroll, of $7500, none of which was contemplated when the outstanding bonds were issued but which in reality adds materially to their security.

The rule is well settled that the imposition of taxes on or exemption of property from taxation is within the sovereign power of the State and one who invokes the contract clause of the Federal Constitution to defeat it carries the burden of showing conclusively that he has a contract right that has been impaired by the exemption. Arkansas Southern Railway Co. v. Louisiana and Arkansas Railway Co., 218 U.S. 431, 31 Sup. Ct. 56, 54 L. Ed. 1097; Gilman v. Sheboygan, 67 U.S. 510, 17 L. Ed. 305, Sovereign Camp W.O.W. v. Boring, 121 Fla. 781, 164 So. 859. The record here fails completely to meet this standard. In fact it shows conclusively that no bond or other contracts are in anywise impaired.

Nor do we think the homestead amendment and the cases construing that are in any sense analogous to the amendment in question and certainly they offer no guide for its interpretation. The homestead amendment at one swoop withdrew the homestead of the head of each family to the value of $5000 from taxation for all time. In the aggregate, this withdrawal amounted to many millions of dollars and on its face had the effect of impairing outstanding bond contracts. It had always been subject to taxation and was in contemplation when outstanding bond contracts at the time of its adoption were made.

The industrial amendment had a maximum life of fifteen years and was limited to industries established on or after July 1, 1929. It had to do with property that had yet to be produced and brought into the State, had never been subject to taxation anywhere, and could not have been in contemplation when outstanding bond contracts were made and was consequently not obligated to pay them. The rationale supporting the two amendments is so widely at variance that we perceive no theory on which the cases affecting the homestead amendment could in anywise influence the interpretation of the amendment under consideration.

In justice to our Brother Sebring, it should be said that since the filing of the original opinion herein, he was by plebiscite of the people, translated to this Court to succeed our Brother Whitfield, who voluntarily retired January 4, 1943. He (Sebring) is therefore not responsible for the error we are correcting. We think the question here involves good faith on the part of the State to carry out its promise and since this element was by press of circumstances overlooked, we are faced with the alternative of eating crow or perpetuating the error. It is better to eat crow than it is to perpetuate an error. The crow is not rationed and the approval of conscience will more than compensate for the eating.

American Can Company's petition for certiorari is therefore granted and the petition of the City of Tampa and others is denied. That portion of the circuit court's order which denied defendants' motion to dismiss the bill of complaint is affirmed, that portion which sustained plaintiff's motions to

strike the several petitions to intervene is affirmed, and that portion which sustained defendants' motion to strike the allegations and prayers of the bill of complaint regarding license taxes is reversed. The net result is that our opinion of December 31, 1942, is receded from in so far as it applies to ad valorem taxes, and it is modified to harmonize with the views expressed in this opinion in so far as it applies to excise taxes. the chancellor will be governed accordingly.

It is so ordered.

BUFORD, C. J., BROWN, CHAPMAN and SEBRING, JJ., concur.

THOMAS and ADAMS, JJ., dissents, adheres to original opinion.