47 So.2d 567 (1950)
GAULDEN
v.
KIRK.
Supreme Court of Florida, en Banc.
July 7, 1950.
Rehearing Denied July 31, 1950.
*570 J. Tom Watson, Tampa, Sumter Leitner, Tallahasse, and Samuel H. Adams, West Palm Beach, for appellant.
Richard W. Ervin, Attorney General, Fred M. Burns, Assistant Attorney General, Francis C. Millican and Clyde G. Trammell, Jr., Special Assistant Attorneys General, for appellee.
HOBSON, Justice.
On the 19th day of November, 1949, a warrant of arrest charging appellant, L.S. Gaulden, with certain violations (hereinafter specifically detailed) of the provisions of Chapter 26319, Acts of Special Session 1949, F.S.A. § 212.01 et seq., known as The "Florida revenue act of 1949", was served upon Gaulden. He was taken in custody by the Sheriff of Palm Beach County, and placed under arrest by said sheriff, being deprived of his liberty thereby.
On the 25th day of November, 1949, Gaulden filed in the Circuit Court of Palm Beach County his petition for writ of habeas corpus against this arrest.
The writ issued on the 28th day of November, 1949, pursuant to order of the Circuit Judge dated the same day. Proper notices of the hearing held under said petition before the Circuit Judge, Honorable C.E. Chillingworth, were given to all parties entitled thereto.
The Court, in and by its order from which this appeal was prosecuted, held Chapter 26319, Laws of Florida 1949 constitutional as against the attack made upon said law by appellant and remanded Gaulden to the custody of the Sheriff pending further action pursuant to the warrant of arrest. Subsequently the Circuit Judge made and entered an order permitting this appeal.
The State Legislature, at its 1949 extraordinary session, enacted said Chapter 26319, Laws of Florida, Acts of 1949, which statute among other things declared it to be "the legislative intent that every person is exercising a taxable privilege who engages in the business of renting, leasing or letting any living quarters, sleeping or housekeeping accommodations" for the exercise of which privilege the said enactment levies a privilege tax in an "amount equal to three per cent of and on the * * * rental charged for such * * * accommodations by the person charging or collecting the rental." Section 3-a of the act, F.S.A. § 212.03(1). The said enactment further requires that the person charging or collecting the said rental pass the same on to the lessee, Section 7-a of the Act, F.S.A. § 212.07, and that he also keep suitable records of such rentals and taxes, Section 12-f of the Act, F.S.A. § 212.12, and makes it a misdemeanor for any lessor to fail to pass the said tax on to the lessee, Section 7-c of the Act, or to fail or refuse to keep suitable records thereof, Section 12-g of the Act.
The affidavit, upon which the warrant was predicated, charged appellant with violating the so-called "Sales Tax" Act in that the said Gaulden "has since November 1st A.D. 1949, and continuously from thence hitherto, failed and wilfully refused to keep" the records required of him by said Chapter 26319, and "has refused to collect the said tax so levied by said Act upon said rentals, and refuses to perform the duties upon him imposed by said Act."
Epitomized, the affidavit and warrant accused the appellant of wilfully, knowingly and intentionally:
(1) Failing and refusing to collect the excise tax imposed by Section 3, Chapter 26319, Laws of Florida, Acts of 1949, from persons leasing or renting temporary living quarters, sleeping or housekeeping accommodations from the appellant; and
(2) Failing and refusing to keep, or cause to be kept, the books and records required of him under and pursuant to said Chapter 26319.
It is the contention of appellant that the Sales Tax Law violates the following sections of the State and Federal Constitutions:
Florida Declaration of rights, F.S.A.
Sections 1, 12, 16, 17, 22.
Florida Constitution, F.S.A.
Article II.
Article III  Sections 1, 16, 17, 18, 20, 21, 30.
*571 Article IV  Section 8.
Article VIII  Sections 6, 7.
Article IX  Sections 1, 2, 3, 5, 11, 16.
Article XVI  Sections 2, 3, 4, 7, 11.
U.S. Constitution
Article I  Section 8, Regulation of commerce among states.
Article IV  Section 2.
Amendment to U.S. Constitution
Article XIV  Section 1.
Counsel for appellant set out the following specific points upon which they rely to support their position that the law here under attack is unconstitutional:
"1. The Revenue Act of 1949 did not create an excise tax; it did create a state property tax; but as either it is invalid. It violates the constitutional plan for state taxation.
"2. Section 24 of the Sales Tax Law, which pretends to make the effective date of the Act November 1, 1949, but actually makes such effective date dependent upon the passage and validity of two other separate Acts of the Legislature, in legal effect makes the Revenue Act as to its effective date contingent, revokable, and delegated in its finality, resulting in an ineffective effort by the Legislature to enact the law; and this Sales Tax Law integrated as it is with these two separate laws, embraces more than one subject, without proper title.
"3. The unlimited and arbitrary discretions accorded the Comptroller in the Act, together with the various delegations of legislative authority provided for in it, make the law unconstitutional.
"4. The exemptions accorded by the Act are so varied, unreasonable, discriminatory, and arbitrary that no uniform or equal system of taxation is provided by the Act, nor is it an act that metes out a tax imposition that provides for just valuation or non-discriminating application.
"5. This Sales Tax Law creates a debt and commands another to pay it, and creates a debt with imprisonment imposed as a penalty for its non-payment, and provides for a system of tax assessing and collecting through means and channels that in each and every instance are unconstitutional.
"6. This law denies due process, and due compensation and immunities granted by the state and federal constitutions, and imposes unreasonable burdens on interstate commerce."
As we approach the question of the constitutionality of the Florida Revenue Act of 1949 we deem it appropriate to keep constantly in mind several well established principles. Those which should receive special emphasis are: the power to enact tax laws is inherent in the state as an attribute or characteristic of government; American Can Co. v. City of Tampa, 152 Fla. 798, 14 So.2d 203; Fleischer Studios v. Paxson, 147 Fla. 100, 2 So.2d 293; State ex rel Hurner v. Culbreath, 140 Fla. 634, 192 So. 814; St. Lucie Estates v. Ashley, 105 Fla. 534, 141 So. 738; Amos v. Mathews, 99 Fla. 1, 126 So. 308; Hunter v. Owens, 80 Fla. 812, 86 So. 839; the State Constitution is not a grant of authority to tax but rather it is a limitation upon the exercise of this innate sovereign power, Gray v. Winthrop, 115 Fla. 721, 156 So. 270, 94 A.L.R. 804; Anderson v. City of Ocala, 83 Fla. 344, 91 So. 182; Cheney v. Jones, 14 Fla. 587; every presumption is in favor of the constitutional validity of an act of the legislature, Shad v. DeWitt, 158 Fla. 27, 27 So.2d 517; Fowler v. Turner, 157 Fla. 529, 26 So.2d 792; Saunders v. City of Jacksonville, 157 Fla. 240, 25 So.2d 648; Nichols v. Yandre, 151 Fla. 87, 9 So.2d 157, 144 A.L.R. 1351; Haddock v. State, 141 Fla. 132, 192 So. 802; Klemm & Son v. City of Winter Haven, 141 Fla. 60, 192 So. 652; Mayo v. Texas Co., 137 Fla. 218, 188 So. 206; Snively Groves v. Mayo, 135 Fla. 300, 184 So. 839; Williams v. City of Jacksonville, 118 Fla. 671, 160 So. 15, 98 A.L.R. 513; Coen v. Lee, 116 Fla. 215, 156 So. 747; City of Sebring v. Wolf, 105 Fla. 516, 141 So. 736; State ex rel. Howarth v. Jordan, 105 Fla. 322, 140 So. 908; Gray v. Central Florida Lumber Co., 104 Fla. 446, 140 So. 320, 141 So. 604; State ex rel. Gillespie v. Thursby, 104 Fla. 103, 139 So. 372, 140 So. 775; State v. Goodgame, 91 Fla. 871, 108 So. 836, 47 A.L.R. 118; State ex *572 rel. Clarkson v. Philips, 70 Fla. 340, 70 So. 367; Ann.Cas. 1918A, 138; Peninsular Industrial Ins. Co. v. State, 61 Fla. 376, 55 So. 398; State ex rel. Attorney General v. Green, 36 Fla. 154, 18 So. 334; Mathis v. State, 31 Fla. 291, 12 So. 681; the burden is upon one who challenges the constitutionality of a law to make its invalidity clearly apparent, Robinson v. Florida Dry Cleaning & Laundry Board, 141 Fla. 899, 194 So. 269; Mayo v. Texas Co., 137 Fla. 218, 188 So. 206; State ex rel. Landis v. Prevatt, 110 Fla. 29, 148 So. 578; Spencer v. Hunt, 109 Fla. 248, 147 So. 282; State ex rel. Davis v. Rose, 97 Fla. 710, 122 So. 225; Neisel v. Moran, 80 Fla. 98, 85 So. 346; one will not be heard to question the constitutionality of a legislative enactment except insofar as he may be able to show that it adversely affects him. See State ex rel. McClure v. Sullivan, Fla., 43 So.2d 438 and cases therein cited. See also Lykes Bros. Inc. v. Board of Commissioners of Everglades Drainage District, Fla., 41 So.2d 898.
In support of their contention that the Revenue Act of 1949 did not create an excise tax but that it did establish a state property tax, counsel for appellant assert that a tax is a property tax if the law which ordains it has the raising of revenue as its primary purpose or object. They cite our opinion in the case of American Can Co. v. City of Tampa, 152 Fla. 798, 14 So.2d 203, as authority for this position.
We squarely face the fact that the Florida Revenue Act of 1949 had the raising of revenue as its principal purpose and objective. However, we do not agree with counsel that every tax created by an act of the legislature for the purpose of raising revenue is by virtue of that fact alone a property tax within the meaning of the words "real or personal property" in Article IX, Section 2 of our Constitution. The definition of a property tax proposed by counsel for appellant is too narrow and restrictive.
They consider a license tax as the only type of tax which may properly be classified as an excise tax and as synonymous therewith. A license tax is an excise tax but counsel fall into egregious error when they assume that a license tax is the only tax which comes under the general heading  excise taxes. Initially, "excise" had only the connotation of an inland duty or impost levied upon the consumption of a commodity, upon retail sales or upon articles of manufacture or sale and also upon licenses to pursue certain trades or deal in certain commodities. "Excises, in their original sense, were something cut off from the price paid on a sale of goods as a contribution to the support of government." 51 Am.Jur. p. 69. Because of the limited scope of the original definition of excise and the further fact that license taxes as such are levied under the police power for the purpose of control and regulation in the interest of the public welfare and cannot have production of revenue as their primary object, confusion arose as to the proper classification to be given taxes levied by so-called sales tax laws. Since they could not be valid license laws having as their principal purpose the raising of revenue, and because they are not in a real sense property taxes and yet are taxes, necessity required that they be catalogued. Consequently, through the years an enlargement of the field of excise taxes developed and the modern view that "an excise tax is any tax which does not fall within the classification of a poll tax or a property tax" (51 Am.Jur. 61) came into existence.
The real test as to whether the tax provided in the instant law is a property tax involves not merely a consideration of the purpose of the act but rather a consideration of the subject of taxation or the thing actually taxed. The Florida Revenue Act of 1949 does not levy a tax upon the goods, wares, merchandise sold by the retailer, or upon the services rendered by a landlord. The tax which is provided in said Act is levied upon the privilege of engaging in certain businesses or occupations although it is computed upon the sales price of the commodity sold or upon the price charged for the service rendered. Furthermore, in his contention that the Revenue Act of 1949 did not create an excise tax appellant fails to recognize the distinction between a license tax levied in the public interest under *573 the police power as a regulatory measure and a privilege or occupation tax levied by virtue of the inherent Sovereign power of taxation as a revenue measure in order to provide or assist in providing the essential requirements of state government. Under all forms of government "the Sovereign must be served" so that the state may, in turn, serve its citizens and secure to them the enjoyment of the privileges and benefits of organized society. Although there are those who apparently wish to extend unduly the periphery of the "essential requirements of governments" sphere, nevertheless, fundamentally the primary distinction between our Government and many others, particularly the totalitarian states, lies in the fact that in this Country the sovereign may be served only in proportion to its service in fulfilling all of the essential requirements of government in the interest of the general welfare. In their brief counsel for appellant said:
"It was Daniel Webster who wrote that our `well proportioned columns of constitutional liberty, if they fail, will not be raised again, but like the Coliseum and Parthenon would be destined to a mournful and melancholy immortality, even though the bitterest tears may flow over them'.
"The power of taxation wrongfully used, unconstitutionally conceived, and exploitingly applied, can bring and will bring about this destruction, about as quickly as anything else that we can think of, particularly when the tax money being raised can be shown not to be essential to government needs."
We recognize the fact that the statement attributed to Daniel Webster is not only profound but worthy of being constantly borne in mind. Speaking abstractly, we likewise agree in part with counsels' statement. From our study of appellant's briefs we have gained the definite impression that the fundamental gravamen of his real complaint stems from the fact that he does not believe the Florida Revenue Act of 1949 was "necessary" legislation. However, we do not understand that the instant attack was made upon the Florida Revenue Act of 1949 on the basis that the tax which it levied was not "essential to government needs." We do not hold that the appellant could have created the factual issue of necessity in connection with legislation upon the subject of taxation. It is sufficient to say that the appellant did not do so. It is not only proper for us to assume that public necessity required the enactment of this legislation in the absence of a direct challenge that such was not the case (unless want of necessity was a self-evident fact or otherwise a matter of which we should take judicial notice) but the executive proclamation calling for the Special Session shows clearly that the Sovereign could not perform its responsibility and duty in providing essential requirements of government without additional revenue and such existing condition was otherwise a fact of which this Court may take judicial notice.
The Florida Revenue Act of 1949, in Section 3 thereof, provides: "It is hereby declared to be the legislative intent that every person is exercising a taxable privilege who engages in the business of renting, leasing or letting any living quarters, sleeping or housekeeping accommodations * * * for the exercise of said privilege a tax is hereby levied * * * equal to three per cent (3%) of and on the total rental charged * * *."
In Sections 4 and 5 the Act likewise uses the expression "Taxable privilege." Subsection (i) of Section 2 of the Act defines the word "business" as used in the Act as including "any activity engaged in by any person, or caused to be engaged in by him with the object of gain, benefit, or advantage, either direct or indirect * * *." The word "business" is generally accepted as synonymous with "occupation". Consequently, we have no difficulty in declaring it to be the express legislative intent that this tax is a privilege or occupation tax and the subject of taxation or the thing taxed is the privilege of engaging in business within the State of Florida. When so considered, the case of the American Can Co. v. City of Tampa, supra, is not authority for declaring the tax created by the Revenue Act of 1949 a property tax but, on the contrary, the opinion in that case recognizes the right of the legislature to *574 impose an occupation or privilege tax with the purpose in mind of raising revenue. In that case we stated:
"If the business is one that does not involve public health, comfort, safety, morals or welfare, an excise tax for inspecting and regulating cannot be imposed, but it is nevertheless subject to an occupation tax for raising revenue, barring constitution exemption." [152 Fla. 798, 14 So.2d 210] (Italics supplied)
Although the privilege of engaging in business may be classified as a species of property, it is not property in the usual, customary and commonly accepted sense of the word. Courts should always give words in the statutes and constitutional provisions the meaning accorded them in common usage unless a different connotation is expressed in or necessarily implied from the context of the statute or constitutional provision in which they appear. State ex rel. Bie v. Swope, 159 Fla. 18, 30 So.2d 748; Miami Bridge Co. v. Railroad Commission, 155 Fla. 366, 20 So.2d 356; Taylor v. State, 117 Fla. 706, 158 So. 437; Voorhees v. City of Miami, 145 Fla. 402, 199 So. 313.
Statutes fundamentally and essentially similar to the Florida Revenue Act of 1949 have been enacted by the legislative bodies of many sister states. Our study discloses the fact that in every instance such a tax law has been upheld as against the contention that it imposed a property, rather than an excise tax and was therefore unconstitutional. 47 Am.Jur. 197, 128 A.L.R. 894, 117 A.L.R. 847, 110 A.L.R. 1486, 103 A.L.R. 93, 89 A.L.R. 1432.
For the sake of clarity we repeat that the tax provided in the Revenue Act of 1949 is not a property tax as contemplated in and prohibited by Article IX, Section 2 of the Constitution of Florida. This being true, it matters not whether it be classified as a state privilege or a state occupation tax for we know of no constitutional provision inhibiting the levy of either as such if it be reasonable and not unjustly discriminatory or arbitrary. Privilege and occupation taxes are catalogued uniformly under the general heading of excise taxes. 51 Am.Jur. 62. The Revenue Act of 1949 does not violate the constitutional plan for state taxation because Article IX, Section 1 of the Florida Constitution which requires that "the Legislature shall provide for a uniform and equal rate of taxation * * *" is not involved since the tax levied by said Act is not an ad valorem property tax but is properly classified as a privilege or occupation tax and, therefore, is an excise tax. Jacksonville Gas Co. v. Lee, 110 Fla. 61, 148 So. 188; C.V. Floyd Fruit Co. v. Florida Citrus Commission, 128 Fla. 565, 175 So. 248, 112 A.L.R. 562; Stewart v. Knott, 128 Fla. 654, 175 So. 254.
The tax levied by the statute here under attack is none the less an excise tax, because the amount of the tax to be paid is measured by the compensation received for the merchandise sold or services rendered. Smith v. City of Miami, 160 Fla. 306, 34 So.2d 544; Bentley-Gray Dry Goods v. City of Tampa, 137 Fla. 641, 188 So. 758; Heriot v. City of Pensacola, 108 Fla. 480, 146 So. 654. Moreover, the tax here involved is not an income tax. Although the tax is determined upon the price charged for the merchandise or services, it is not a tax upon the personal property or services, but upon the privilege of selling the same, and it is measured by the extent to which the privilege is enjoyed. Lott v. Ross & Co., 38 Ala. 156; Nachman v. State Tax Commission, 233 Ala. 628, 173 So. 25 (text 31) and cases therein cited.
Section 24 of Chapter 26319, Laws of Florida, Acts of 1949, provides: "* * * and it is the legislative intent that the tax hereby levied in this Act shall not levy unless and until the said two other and separate Acts shall become law. Therefore, this Act shall take effect November 1st, 1949, immediately after and only after the said two other and separate Acts become law. Provided, however, if for any reason either of the two said other and separate Acts should fail to become a law then in such event it is the declared legislative intent that this Act shall not take effect but shall be inoperative and void."
*575 Section 18, Article III of the Florida Constitution declares that, "No law shall take effect until sixty days from the final adjournment of the session of the Legislature at which it may have been enacted, unless otherwise specially provided in such law." (Italics supplied)
Appellant contends that Section 24 of the Florida Revenue Act of 1949 violates Section 18, Article III of our Constitution in that said Section 24 "in legal effect makes the Revenue Act as to its effective date contingent, revokable and delegated in its finality, resulting in an ineffective effort by the Legislature to enact the law". With this contention we cannot agree.
The "sixty day" provision of Section 18, Article III of the Florida Constitution was not applicable to the Florida Revenue Act of 1949 because the effective date of said Act was "otherwise specially provided in such law."
We may and do take judicial notice of the fact that all three enactments, i.e. Chapters 26319, 26320 and 26321, of the Florida Legislature at the Special Session of 1949, F.S.A. §§ 212.01 et seq., 210.01 et seq., 208.44, were passed, approved by the Governor and became effective November 1, 1949.
The universal rule is that, "In the absence of constitutional or statutory provisions to the contrary, statutes may become effective on the happening of certain conditions or contingencies specified in the act, or implied therefrom." 59 C.J. 1156, section 688; Town of San Mateo City v. State ex rel. Landis, 117 Fla. 546, 158 So. 112; Brown v. City of Tampa, 149 Fla. 482, 6 So.2d 287.
The contingency may be the enactment or approval of another enactment. Shehane v. Wimbish, 34 Ga. App. 608, 131 S.E. 104, text 105; Marr v. Fisher, 182 Or. 383, 187 P.2d 966, Text 968 and 969; People v. Sterling Refining Co., 86 Cal. App. 558, 261 P. 1080, text 1083; Gillum v. Johnson, 7 Cal.2d 744, 62 P.2d 1037, 63 P.2d 810, 108 A.L.R. 595, text 602; Johnson v. State of Washington, 187 Wash. 605, 60 P.2d 681, 106 A.L.R. 237.
The contention that the Florida Revenue Act of 1949 is unconstitutional because "integrated as it is with these two separate laws [it] embraces more than one subject without proper title" and therefore contravenes Section 16, Article III of the Florida Constitution, is without merit. Chapter 26319, Acts of Special Session of 1949, is a law which embraces but one subject and matters properly connected therewith. The fact that it is an act which was passed as part and parcel of a comprehensive tax program devised by the legislature in the exercise of its law-making power, makes it none the less a single law within the purview of Section 16, Article III of our Constitution. Indeed, the legislature could not perform its duties or measure up to its responsibilities if we were to give the narrow construction to Section 16, Article III of the Florida Constitution which is suggested by counsel for appellant. No single law could possibly be invented which would meet constitutional requirements and at the same time contain all of the essential features of a comprehensive legislative program on any subject which affects the general welfare so vitally as does taxation. The legislature pursued the only available course since its program necessarily involved a consideration of the tax structure not only of the State but also of its multiple political subdivisions and quasi-independent governmental units within its borders in the interest of the welfare of its citizens as a whole. A legislative program of such magnitude may necessarily involve several subjects before the ultimate end effect can be accomplished. It was essential, therefore, in enacting its program that the legislature provide a separate law for each subject with which it dealt. It had no alternative and it cannot be said that it violated Section 16, Article III of the Florida Constitution for actually it complied meticulously with the requirements of that constitutional provision.
In considering appellant's specific points previously set forth herein as numbers 3 and 4, we encounter difficulty in determining from his brief just what discretions *576 accorded the comptroller are so unlimited and arbitrary and which exemptions expressed in the Act are so varied, unreasonable, discriminatory and arbitrary as to affect him adversely in the enjoyment of his constitutional guaranties.
It appears that his main objections, at least those which we agree may be raised by him, are:
A. The law levies a tax upon a landlord who owns and rents apartments which provide separate accommodations for more than two families living independently of each other and exempts the two-family apartments.
B. The law levies a tax upon the landlord who rents hotel rooms or apartments to guests who have not resided in the same hotel or apartment for a period of longer than six months, and exempts the landlord from the tax if the guest has occupied the accommodations for a longer period.
Appellant entertains the view that the law unreasonably and arbitrarily discriminates against him as an owner of an apartment building which provides separate accommodations for more than two families living independently of each other. The question presented is whether the exemption of two-family apartment buildings is an unreasonable classification.
The Florida Revenue Act of 1949 levies a tax upon the privilege of engaging in certain businesses. Unquestionably the legislature determined that the owner of a two-family apartment building should not be considered as engaging in the business of renting apartments. This is a reasonable classification because the renting of accommodations in a two-family apartment building is engaging in the business of renting apartments in such a trivial and inconsequential manner as to be negligible. Indeed the law which created the Hotel Commission and defined "apartment house" section 511.01, F.S. 1941, F.S.A. § 511.01, likewise exempted two-family apartment buildings from its operation, which exemption presumably was made also in view of the fact that one who rents no more than two family units in a single building is not substantially engaging in a commercial enterprise.
The landlord against whom the tax is levied and who rents to transients as distinguished from permanent guests must rest his complaint upon the distinction which is made in the law between a transient and a permanent guest. A permanent guest or resident is defined by the Act as "any person who shall reside longer than six months at ony one hotel, apartment house, rooming house, tourist or trailer camp, and shall have paid the tax levied by this section for six months of residence in any one hotel, rooming house, apartment house, tourist or trailer camp." F.S.A. § 212.03(4). Certainly it was appropriate for the legislature to place the business of the landlord who rents to transients in a different class from that of the landlord who rents to permanent guests or tenants. These landlords may be in the the same general class  assuredly both of them are engaged in renting living accommodations  but the distinction made between their respective businesses for the purpose of taxation under the provision of this Act is permissible classification and is not unreasonable, arbitrary or unjustly discriminatory. The landlord who rents to transients rather than permanent tenants charges higher per diem prices, must (because of the very nature of his trade or enterprise) give strict daily attention and supervision to his business and guests and operates in a special, distinct class  possibly a more lucrative field. It was necessary to establish some period of time which would mark the difference between a transient and a permanent guest. In its wisdom the legislature saw fit to establish six months residence as the criterion. Such period of time constitutes a reasonable basis for the cleavage of the two classes of tenants and this distinction is ample justification for the difference in classification of the businesses engaged in by the landlords. Such division or classification is recognized generally throughout the business world; indeed, in the hotel and apartment trade the difference between the business of furnishing living accommodations *577 to transients and the business of supplying living accommodations to permanent guests or tenants is well known and accepted. Many hotels cater largely, if not exclusively, to so-called commercial or transient guests. Moreover, we take judicial notice of the fact that the tourist business in this State is one of our greatest economic assets. Our winter, and for that matter our summer, visitors usually enjoy the famed year around climate with which we fortunately have been endowed, for less than six months in each year. If they remain longer they should be extended the privilege of being classified as permanent guests or tenants and the landlord's business thereby removed from the classification of furnishing living accommodations to transients. The six months basis of differentiation is reasonable and does not amount to unjust or arbitrary discrimination.
The remaining contentions of appellant which we deem worthy of consideration are:
1. That the provision in the Statute requiring the landlord to pass the tax on to the tenant and making it a misdemeanor for him to fail to so pass it on is invalid and unenforceable because it creates a debt and requires another to pay it, and creates a debt with imprisonment imposed as a penalty for its non-payment.
2. That the law here under consideration denies due process, and due compensation and immunities granted by the State and Federal Constitutions, and imposes unreasonable burdens on interstate commerce.
3. That the provision in the Florida Revenue Act of 1949 requiring the lessor to keep and preserve suitable records of his rentals and such other books of account as may be necessary for the State Comptroller to determine the amount of the taxes due is invalid and unenforceable.
The provision of the law which requires the merchant or landlord to pass the tax on to, and collect it from, the purchaser or tenant appears harsh and unreasonable to the merchant or landlord who is financially able to absorb the tax. However, we must consider the plight of the small merchant or landlord who cannot afford to pay the tax and remain in business. The provision for passing on the tax was obviously inserted for the purpose of protecting merchants and landlords as a whole and to forestall unfair trade practices, thus preventing the destruction of the small operator's business.
We quote with approval from the case of Hooten v. Carson, 186 Tenn. 282, 209 S.W.2d 273, 275:
"The main contention of appellant challenging the validity of the statute is that the tax is upon the consumer-buyer, and that this is not a privilege that may be taxed. Under Section 5 of the Act the tax is required to be collected from the consumer; that the amount must be added to the retail price of the article, etc. No retail dealer is permitted to advertise that the tax will not be collected. While the State concedes that the purchaser ultimately pays the tax, the Act expressly states that it is a privilege tax levied upon the merchant. The State can only enforce its claim for taxes solely against the merchant. All penalties for nonpayment run against the retailer. It is therefore earnestly insisted that `the tax in question is a tax upon the retail seller.'"
"We are convinced from an examination of a number of leading tax cases that this contention is correct. It is conceded by appellant's counsel that had the statute merely levied a tax upon sales, that the merchant could add the tax to the sale price and collect it without doing any violence to any constitutional right of the purchaser. Regardless of this admission, everyone is conscious of the fact that taxes of every kind, levied upon any business, are passed on to the buying public.
"There is a strong and very just reason why the legislature made it mandatory upon the seller to collect the tax from the purchaser. This express direction is found in many of the retail sales tax statutes. The courts, in discussing this provision, have held that it is a matter of reasonable regulation of trade practices. Thus in Doby v. State Tax Commission, 234 *578 Ala. 150, 174 So. 233, 237, the Supreme Court of Alabama, in dealing with the question, says: `The mandatory provision in this section is for the benefit of the seller, but more particularly for the protection of all retailers charged with the payment of this tax. The lawmakers deemed it unfair competition for the strong to absorb the tax and build up his trade at the expense of the weaker dealer who could not absorb it. So, the legal duty of the retailer, the taxpayer, is to pay the tax and also to collect a like amount from the purchaser. It is not a question of whether he should pay the tax or, in the alternative collect the tax for the state.' See also Tanner v. State, 28 Ala.App. 568, 190 So. 292; State ex rel. Rice v. Allen, 180 Miss. 659, 177 So. 763.
"In the State of California there is a requirement in the sales tax statute that the seller collect the tax from the buyer. The Supreme Court of that State held that it was valid, holding that the tax is upon the privilege of transacting business. See also Western Lithograph Co. v. State Board of Equalization, 11 Cal.2d 156, 78 P.2d 731, 117 A.L.R. 838; De Aryan v. Akers, 12 Cal.2d 781, 87 P.2d 695."
In State ex rel. Rice v. Allen, 180 Miss. 659, 177 So. 763, 764, the Supreme Court of Mississippi said:
"A provision in a sales tax statute requiring dealers to collect the tax from their purchasers is in general use. 47 Harvard Law Review 868. The constitutional validity thereof seems logically to follow from Notgrass Drug Co. v. State ex rel. Rice, [175 Miss. 358, 165 So. 884,] and that such a requirement does not violate due process of law has been expressly decided by the Supreme Court of the United States in Pierce Oil Corporation v. Hopkins, 264 U.S. 137, 44 S.Ct. 251, 68 L.Ed. 593, and Monamotor Oil Co. v. Johnson, 292 U.S. 86, 54 S.Ct. 575, 78 L.Ed. 1141. See, also, Heriot v. City of Pensacola, 108 Fla. 480, 146 So. 654; Rainer National Park Co. v. Martin, D.C., 18 F. Supp. 481; Johnson v. Diefendorf, 56 Idaho 620, 57 P.2d 1068; Fox v. Frank, 52 Ohio App. 483, 3 N.E.2d 996; Morrow v. Henneford, 182 Wash. 625, 47 P.2d 1016; Texas Co. v. State, 31 Ariz. 485, 254 P. 1060, 1062, 53 A.L.R. 258; Standard Oil Co. of Louisiana v. Brodie, 153 Ark. 114, 239 S.W. 753 Cf. In re Opinion of the Justices, 88 N.H. 500, 190 A. 801."
In providing that the tax be passed on to the consumer the law does nothing more than adopt the procedure which, historically and traditionally, has been followed voluntarily, if not necessarily, in the commercial world from the inception of excise taxes as imposts and inland duties. Since such requirement is in the interest of those as an entire class against whom the tax is levied and is not contra to, but in line with, commercial custom it cannot be argued that it is inimical to public policy.
We hold that the provision requiring the tax to be passed on to and collected from the purchaser or tenant is valid and does not do violence to the due process clauses of the State and Federal Constitutions. We further conclude that the appellant has failed to show wherein the law imposes unreasonable burdens on interstate commerce. Certainly he has not established the fact that he is engaging in any business which might be classified as interstate commerce.
Section 1 of the Florida Declaration of Rights provides: "All men are equal before the law, and have certain inalienable rights, among which are those of enjoying and defending life and liberty, acquiring, possessing and protecting property, and pursueing [sic] happiness and obtaining safety."
The inalienable right to acquire, possess and protect property contemplates property in its realistic and commonly accepted sense of something concrete or substantial i.e. a thing which may be subject to acquisition, possession and protection. Although the privilege of engaging in business may, as we have said, be termed a species of property, it is not property in the sense of that word as it appears in Section 1 of our Bill of Rights. Absent constitutional restraint the sovereign power to tax the exercise of the privilege of engaging *579 in any business or occupation, in order to provide the essential requirements of government, is superior to the right of the individual to acquire and retain a business status. We have previously determined that the tax levied by Chapter 26319 Acts of the Florida Legislature of 1949 at its Special Session is not a property tax, but is a privilege or occupation tax; that the tax is levied upon the privilege of engaging in certain businesses or occupations; that the merchant (or, as here, landlord) is the one who is required to pay the tax to the State and all penalties provided in the law run against him. Further, we have decided that the consumer is not the one against whom the tax is levied  although it is well recognized that in the end he pays every excise tax, hidden though it may be, when he pays the retail price for the commodity sold or the charge for the services rendered. Since the tax is levied upon the privilege of engaging in business in Florida and the penalties provided by the Act run against the merchant or landlord and his inalienable right to acquire, possess and protect property is not involved, it follows in any event that Section 1 of the Bill of Rights is not applicable hereto.
Although appellant challenges the law only as a landlord in the instant suit, he is appellant in another case now pending before us (Gaulden v. Gentry Brothers Paint and Glass Co., 47 So.2d 826) in which he appears as a consumer. In the latter case he makes the contention that his inalienable right to acquire property cannot be taxed and that as a consumer he cannot be required to pay the debt of another. The Florida Revenue Act of 1949 requires that "Dealers shall, as far as practicable, add the amounts of the tax imposed under this Act to the sale price or charge, which shall be a debt from the purchaser or consumer to the dealer, until paid, and shall be recoverable at law in the same manner as other debts * * *." F.S.A. § 212.07(2). (Italics supplied). When the tax which is levied upon the dealer for the privilege of engaging in business in this State is so added to the sale price or charge it becomes part and parcel thereof. Consequently, it is then as much a debt from the consumer to the dealer as was the sale price or charge before its increase by virtue of the addition of the amount of the tax. If not paid the sale price of any article is recoverable at law in an action brought by the dealer against the consumer. We find nothing novel or unconstitutional in a law which provides that a debt may "be recoverable at law."
The tax provided in the subject law is not a debt within the meaning of that word as used in Section 16 of the Florida Declaration of Rights, which provides: "No person shall be imprisoned for debt, except in cases of fraud." See 51 Am.Jur. pp. 41 and 860. In view of this fact it is clear appellant's contention that the Florida Revenue Act of 1949 is unconstitutional because it requires one person to pay the debt of another is not well founded. The consumer does not pay the debt of the retailer for his tax obligation is not a "debt". The only debt as contemplated by our Bill of Rights which may be said to be created by the law is the one arising from the contractual relationship between the merchant or landlord and the consumer or tenant. The act of paying a constitutionally levied tax is nothing more (nor less) than a bearing of the taxpayer's share of the necessary expenses of government. It is a contribution toward the governmental machinery of our democratic way of life and is essential to its preservation. Such payment or contribution does not amount to the satisfaction of a civil debt in the legal significance of that term. It is more in the nature of a privilege, or the fulfillment of a moral obligation, of citizenship. Such privilege, or obligation, if not voluntarily enjoyed or discharged, may be enforced by the will of the majority through the exercise of inherent sovereign power.
Having decided that the tax created by the Florida Revenue Act of 1949 is not a property tax but is a privilege or occupation tax and therefore is properly classified as an excise tax and that none of the provisions which appellant has attacked and which we have heretofore discussed *580 trench upon any of his constitutional guaranties, we have little difficulty in determining the remaining question as to whether the method devised for determining the correct amount of the tax which may be due and for enforcing the collection of the tax violates any of the appellant's constitutional rights.
The purpose of the Florida Revenue Act of 1949 would be defeated; indeed, the law would be but an empty gesture, if it did not contain the requirement that books of record be kept by the merchant or landlord, so that the tax due might be properly ascertained; its potency would be destroyed if there were no penalties for failure to keep such records and to pay the tax. Section 15 of the Act provides that the taxpayer may appeal for a rehearing before the Comptroller and that the determination made by the Comptroller may be reviewed "in appropriate proceedings in any of the circuit courts of Florida, and in such review there shall be no presumption in favor of the comptroller's findings." The foregoing provision is a complete answer to the suggestion that the Act does not provide due process. The affidavit and warrant in this case disclose the fact that the appellant was not charged with the offense of failing to pay the tax as provided in Section 12, subsection (a) of Chapter 26319, Laws of Florida, 1949.
The appellant suggests that many other provisions of the Act are unconstitutional, but he has failed to show wherein any of his constitutional rights, privileges or immunities have been destroyed, invaded or infringed. The Florida Revenue Act of 1949 may not be the model of a perfect Sales Tax Law but we are concerned only with the question  is it constitutional as applied to the appellant? So long as the provisions of the Act do not violate any of appellant's constitutional rights we cannot concern ourselves with the problem as to whether said Act might have been more precisely written, nor with the contention that it might have been a better legislative policy to have enacted a so-called "straight across the board" tax with a rate less than 3%. This is a matter which lies entirely within the province of the law-making body.
The order from which this appeal was prosecuted is hereby affirmed.
ADAMS, C.J., and TERRELL, THOMAS, SEBRING and ROBERTS, JJ., concur.
CHAPMAN, J., agrees to the conclusion.